# CHARLESTON.

HORSE CREEK LAND & MINING CO. v. MIDKIFF *et al.*

Submitted January 29, 1918.    Decided February 5, 1918.

1. MINES AND MINERALS—*Interest Granted or Reserved*—*"Mineral."*

   The term *mineral,* used to describe the interest in land granted or reserved, *prima facie,* includes petroleum oil and natural gas, unless it appears the term was employed in a more restricted sense. (p. 618).

2. SAME—*Reservation—Construction.*

   The following clause in a deed, viz.: "To have and to hold with all the appurtenances thereto belonging excepting and reserving all the minerals, coals, together with all the necessary rights of way of ingress and egress to and from over through or under said premises to mine, excavate and transport the same excepting a sufficiency of said coals for domestic use", is not a reservation of the oil and gas but only of the coal in the land. (p. 618).

Appeal from Circuit Court, Lincoln County.

Suit for injunction by the Horse Creek Land & Mining Company and others against John A. Midkiff and others. Decree for complainants, and defendants appeal.

*Reversed in part, affirmed in part.*

*E. E. Young, Walter S. Sugden, Charles N. Kimball* and *Arthur E. Young,* for appellants.

*Linn. & Byrne,* and *Smith & Steed,* for appellee Horse Creek Land & Mining Co.

*R. G. Altizer,* for appellee United Fuel Gas Co.

*A. B. Fleming, Charles Powell* and *Kemble White,* for appellee South Penn Oil Co.

WILLIAMS, JUDGE:

This appeal, taken by the defendants John A. Midkiff and the Carter Oil Company, from a decree of the circuit court of Lincoln county, entered on the 30th of June, 1916, perpetually enjoining them, their agents and employes from obstructing or hindering any of the plaintiffs, their agents or em-

ployes in the necessary use of the surface of a certain tract
of 62 acres of land in said county for the purpose of drilling
for, producing and removing therefrom the oil and gas
therein, and holding that the Horse Creek Land & Mining
Company, one of the plaintiffs, is the owner in fee of the pe-
troleum oil and natural gas therein, presents but a single
question. The oil and gas under said 62 acres of land is the
subject of controversy. Plaintiffs claim title thereto by grant
from John W. Stevens and wife to W. L. Ashby and Julian
Hill, dated August 25, 1902, of all the minerals underlying
a large body of land, including said 62 acre tract. This
title to the minerals passed by subsequent conveyance to the
plaintiff Horse Creek Land & Mining Co. It leased the oil
and gas to another of the plaintiffs, the South Penn Oil Com-
pany, and the latter company then leased the gas to the
United Fuel Gas Company, also one of the plaintiffs.

Defendants claim title to the entire tract of 62 acres, ex-
cepting only the coal therein, by an earlier grant from John
W. Stevens and wife to John A. Midkiff for said 62 acre tract,
dated May 15, 1891. This deed, containing the reservation
hereinafter quoted, was recorded on the 16th of November,
1891. The defendant, Carter Oil Co., claims the right to the
oil and gas by virtue of leases therefor, covering the 62 acres,
made to it by John A. Midkiff and wife, on the 9th of March
and 20th of October, 1914, respectively.

The public records of Lincoln County were destroyed by
fire in 1909, and John A. Midkiff thereafter procured a sec-
ond recordation of his deed to be made, which was done on
the 17th of July, 1911. In the deed, as it appeared when
presented the second time for recordation and as it was re-
corded, no reservation of minerals appeared. But as origin-
ally executed, and as shown by the first recordation it con-
tained the following reservation in the habendum clause, viz.:

"To have and to hold with all the appurtenances thereto
belonging excepting and reserving all the minerals, coals, to-
gether with all the necessary rights of way of ingress and
egress to and from over through or under said premises to
mine, excavate and transport the same excepting a sufficiency
of said coals for domestic use."

The chancellor found that the above quotation constituted a part of the deed as it was executed by the grantor, and that it had been fraudulently erased therefrom, before the second recordation of the deed was made; and no complaint is made of his finding in that respect. But he construed the clause as reserving to the grantor, not only title to the coal but to the oil and gas as well, and this is the cause of complaint. It is insisted that the proper construction of the language will limit the reservation to coals, and will allow all other minerals, including oil and gas, to pass by the grant of the land to said Midkiff.

The term *mineral,* when employed in conveyancing in this state, is understood to include every inorganic substance which can be extracted from the earth for profit, whether it be solid, as stone, fire clay, the various metals and coal; or liquid, as for example, salt and other mineral waters and petroleum oil; or gaseous, unless there are words qualifying or limiting its meaning, or unless from the deed, read and construed as a whole, it appears that the intention was to give the word a more limited application. ''Petroleum oil and natural gas are minerals, and in their places are real estate and part of the land.'' *Preston* v. *White,* 57 W. Va. 278. *Sult* v. *A. Hochstetter Oil Co.,* 63 W. Va. 317, and *Williams* v. *South Penn Oil Co.,* 52 W. Va. 181. This application of the term is in accord with the holdings of the courts in most jurisdictions. Bouvier's Law Dict., and 3 Words & Phrases, (Ser. Secs.), 388, 389. A very learned and exhaustive discussion of what is included in the term *minerals* will be found in *Murray* v. *Allred,* 100 Tenn. 100, 39 L. R. A. 249.

The contention, however, is not that petroleum oil and natural gas are not minerals, but that the language of the exception, read and considered as a whole, clearly evinces a purpose to except only the coals. Nothing contained in any other part of the deed sheds any light on this question. The deed is simply a grant of the 62 acres of land, describing it by metes and bounds. The estate or interest in the land intended to be granted is not defined or limited in the granting part of the deed, other than by the use of the word land. Hence, under the statute, Sec. 8, Ch. 71, Code, the effect of

the deed would be to pass all the estate and interest the grant-
or then had, but for the reservation. If only the term *min-
erals* had been employed, there could then be no question of
the grantor's purpose to reserve all minerals. But he used
the word *coals* immediately following minerals, and it is to be
presumed he used it for some purpose, and what could he
have intended if his purpose was not to limit or restrict the
application of the more comprehensive term? Coal is a min-
eral and was included in the more general term, and, there-
fore, logically speaking, he could have employed the term
coal for no other purpose than to define more particularly the
thing reserved. The term *coal* is here used to qualify the
term just preceding it in the sentence, and is what gram-
marians call a noun in apposition to the noun it describes
or limits, the two meaning the same thing or being used to
designate a single object. The rest of the clause which fol-
lows reflects no light on this point. The fact that in one
place the thing reserved is referred to as "the same", and in
another place as "said coals" is not inconsistent with either
construction contended for. The words, "the same", relate
to the thing reserved, but do not in any sense aid in deter-
mining what it is; and the words "said coals" perform the
same office, and apparently relate to the same thing as do the
words "the same", previously employed in the sentence.

If there was any doubt respecting the proper interpreta-
tion of this clause, there is another rule of construction that
might be invoked in support of our view, and that is, when
there is doubt respecting the construction of a deed, its lan-
guage should be construed most strongly against the grantor.

The admitted fact that the land was assessed on the land
books to John A. Midkiff from 1892 to 1905, and his estate
therein described as a fee, and in the year last named was
changed to an assessment of the surface only and so con-
tinued down to, and including the year 1912, is referred to as
a circumstance showing a practical construction of the deed
by said Midkiff against his present contention. We hardly
think so. That he was assessed with a fee in the land for so
many years from the time he obtained his deed, was evidently
a mistake, or an omission to have, at least, the coal assessed to

Stevens or his grantees, other than Midkiff; and in 1905, when his assessment was changed to one for the surface only, the land was not known to contain any valuable mineral except coal. There is now no controversy respecting the reservation of the coal by Stevens and the assessment would doubtless have been made to Midkiff of the surface only, if no other minerals than the coal had been reserved.

In so far as the decree appealed from adjudges the Horse Creek Land & Mining Company to be the owner of any other minerals in the land, except the coals, and perpetually enjoins said Midkiff and his lessee, the Carter Oil Company, from interfering with the Horse Creek Land & Mining Company and its lessees in production of petroleum oil or natural gas from said 62 acre tract of land and transporting the same therefrom, it is reversed, and in all other respects said decree is affirmed, with costs to the appellants.

*Reversed in part. Affirmed in part.*