VOGEL et al. v. COBB.

No. 30980. Sept. 21, 1943.

*141 P. 2d 276.*

Mark H. Adams, Charles E. Jones, and J. Ashford Manka, all of Wichita, Kan., and Theodore Pruett and Grover C. Wamsley, both of Anadarko, for plaintiffs in error.

Sam L. Wilhite, of Anadarko, for defendant in error.

HURST, J. The defendant, Palmer Oil Corporation, owns and operates a lease of 80 acres of land now owned by plaintiff, Sam Cobb, but formerly belonging to Thomas Dixon. Prior to July 13, 1940, while Dixon was still the owner of the land, the Palmer Oil Corporation built a road across a portion of the land and drilled a water well thereon from which it used water for its operations on adjoining leases. Because of these acts Dixon claimed damages against the company. On July 13, 1940, Dixon, having previously disposed of the minerals under the land to third parties not here involved, conveyed the surface thereof to plaintiff, and at the same time assigned to him his claims against the Palmer Oil Corporation, which constitute the subject matter of the present action.

The petition contains seven causes of action. The first is for the recovery of $125, an amount alleged to have been agreed upon between Dixon and defendant as damages for the construction of the road on the leased premises. The next five causes of action are for the recovery of $962, the alleged value of water used in drilling wells and supplying houses located on other leases, while the seventh and last is for injunctive relief and it not material here.

At the trial the evidence consisted of

a written stipulation, a deposition, and the testimony of several witnesses. Defendants admitted that they used water from the Dixon lease to drill wells on other leases for a period of 53 days and that they supplied water therefrom to two lease houses located on other lands for a period of approximately two years. Although the evidence was conflicting, there was testimony from which the jury could find that the reasonable value of the water used for drilling was from $4.50 to $10 per day, and that the reasonable value of the water used in the lease houses was $2.50 per month. Plaintiff testified that before purchasing the land from Dixon, he inquired of the defendant Julius Vogel, who was employed by the Palmer Oil Corporation as farm boss of the lease, whether his company had agreed to pay Dixon $125 for the road damage; that upon receiving an affirmative reply he informed Vogel that he was bargaining with Dixon for the purchase of the land, and that if he purchased the same he would be compelled to pay Dixon the $125 road damage; that he inquired of Vogel whether in such event the company would repay the $125 to him; that Vogel replied that it would, and that acting upon such statement he paid Dixon the $125.

The jury returned a verdict in favor of plaintiff for $694, and from a judgment entered thereon, defendants appeal.

1. Defendants first contend that all of the first six causes of action are based upon tort and were not assignable. Although under our statutes actions arising wholly ex delicto may not be assigned (Kansas City, M. & O. Co. v. Shutt, 24 Okla. 96, 104 P. 51, 138 Am. St. Rep. 870, 20 Ann. Cas. 255), this rule does not apply where the wrong complained of "partakes not only of the nature of a tort, but also of an implied contract, being in the nature of assumpsit, as, for instance, the unlawful taking and conversion of money or of other personalty to one's use", for in such a case the injured party may waive the tort and sue upon an implied contract. Kansas City, M. & O. Co. v. Shutt, above. See, also, Ashton v. Noble, 46 Okla. 296, 148 P. 1042; Stewart v. Balderston, 10 Kan. 131; 6 C. J. S. 1082, 1083; 4 Am Jur. 255.

It is apparent therefore that the five causes of action based upon a wrongful taking and use of the water were assignable.

The first cause of action, being based upon the express contract between Dixon and the Palmer Oil Corporation to settle the road damage for $125, was likewise assignable. That plaintiff was suing upon the assigned contract rather than upon the tort is shown by the fact that he prayed for $125, the amount of the agreed settlement, rather than for the actual damage caused by the road. In determining whether a claim is based upon contract or tort "it is proper to examine the pleadings and ascertain from the allegations and prayer thereof the relief sought, and every doubt will be resolved in favor of the contract and against the tort." Stringer v. Kessler, 56 Okla. 50, 155 P. 867.

2. Defendants next contend that under the terms of the lease they had a right to make a reasonable use of the leased premises in the development thereof for oil and gas, and that since plaintiff neither pleaded nor proved an unreasonable or excessive use thereof, both the express contract for road damage and the implied contract for the value of water used in lease houses on other lands were without consideration.

Defendants are estopped to make such defense to the first cause of action. Having induced plaintiff to part with $125 by their representation that they had agreed to pay that amount to Dixon for road damage and that they would repay the same to him in the event he purchased the claim from Dixon, defendants will not now be heard to say that their original agreement with Dixon was unenforceable. Collings v. Industrial Sav. Soc., 94 Okla. 271, 221 P. 1036; 31 C. J. S. 283.

Defendants' argument that the provisions of the lease permitted the taking of water therefrom to supply houses located off the lease is based on the

fact that the occupants of such houses operated the Dixon lease as well as other leases in the vicinity. The lease gives the company the right to free use of "water produced on said land for its operation thereon." Defendants cite no authority for their position, and in the absence thereof we are of the opinion, and hold, that this clause does not give the company the right to use water from the leased premises to supply houses located off the lease, even though the same be occupied by parties who, as only part of their duties, operate the lease on the land from which the water is taken.

3. Defendants next urge that plaintiff failed to establish that Vogel had authority, as agent of the Palmer Oil Corporation, to bind the company to pay plaintiff the sum of $125 in the event he paid the same to Dixon. Both Vogel and the secretary of the defendant company testified that he had no such authority. On the other hand, the stipulation of the parties was that Vogel was the person "immediately in charge of the oil and gas operations upon the lease," and that he "acted as the duly authorized agent of the defendant Palmer Oil Corporation with respect thereto." This was at least some evidence that Vogel did have authority to bind the company. Under such conflicting evidence the court properly submitted the issue to the jury.

4. The water involved in the fourth cause of action was taken more than two years but less than three years prior to the commencement of this suit. Defendants urge, therefore, that such cause of action is barred by the terms of 12 O. S. 1941 § 95 (3), which provide that an action for the "taking" of personal property must be brought within two years from the accrual of the cause of action. As we have seen, however, the injured party may waive the tort and sue on an implied contract to pay the value of the property taken, as was done here, and in such case the three-year statute of limitations governing oral contracts [12 O. S. 1941 § 95 (2)] is applicable. Liberty National

Bank of Weatherford v. Lewis, 172 Okla. 103, 44 P. 2d 127.

5. Defendants next argue that Dixon was not the owner of the subterranean waters which were taken, and that plaintiff therefore could not recover for the same. This argument is based on the fact that prior to defendants' appropriation of the waters, Dixon had executed to third parties two separate deeds to the minerals under the land in question. The first deed recited that he conveyed to his grantee one-half of all the "oil, petroleum, gas, coal, asphalt and all other minerals of every kind or character in and under and that may be produced from" said real property. The second deed recited that he conveyed to his grantee his remaining one-half interest to all the "oil, gas and other minerals in and under and that may be produced from" said land. Defendants argue that since water is a mineral, it was included in the term "other minerals" used in the two conveyances.

While it may be conceded that water, in a technical sense, is a mineral, it does not follow that it will pass under ordinary mineral deeds such as those here involved. Under the rule of ejusdem generis, where a party or author, in a contract, conveyance, will, or statute, makes use "first, of terms, each evidently confined and limited to a particular class of a known species of things, and then after such specific enumeration, subjoins a term of very extensive signification, this term, however general and comprehensive in its possible import, yet, when thus used, embraces only things 'ejusdem generis', i. e., of the same kind or species, with those comprehended by the preceding limited and confined terms. In a word, the last is restricted to the subject matter of the preceding terms." Ex parte Leland (1819) S. C. L. 460. See, also, Pulom v. Jacob Dold Packing Co., 182 Fed. 356; Steinman Dev. Co. v. W. M. Ritter Lmbr. Co., 290 Fed. 832, aff. 290 Fed. 841; Smith, Trustee, v. First Nat. Bank, 114 Okla. 293, 245 P. 653; Wolf et al. v. Blackwell Oil & Gas Co. et al.,

77 Okla. 81, 186 P. 484; Camden Safe Deposit & Trust Co. v. Cape May Illuminating Co., 102 N. J. Eq. 351, 140 Atl. 672; Gaustad v. Nygaard, 64 N. D. 785, 256 N. W. 230; 19 C. J. 1255, and note 16; Thornton, Oil & Gas (5th Ed.) § 37; Summers, Oil & Gas, vol. 1, pp. 128, 129, 135, 138, 328, 346. And under this rule it is generally held that where a grant is of certain specified minerals and "other minerals," the latter term includes only minerals of the same kind as those specified and does not include a substance which, although a mineral in the broad sense of the term, is not similar to those specifically mentioned. 40 C. J. 979, notes 94, 95.

The minerals specifically named in the deeds (coal, oil, petroleum, gas and asphalt) are of a species or class which does not include water. The former are valuable minerals of a somewhat similar chemical composition, existing in limited amounts, which are ordinarily extracted from the earth and sold for profit, but which serve no useful function in connection with the use and enjoyment of the surface. Water, on the other hand, is of quite a different chemical composition, is not ordinarily thought of as valuable, but is necessary to life and the use and enjoyment of the surface.

We conclude, therefore, that the term "other minerals," used in the deeds referred to minerals of the same generic class as coal, oil, gas, and asphalt and did not include water.

6. Defendants next contend that a new trial should have been granted on account of their inability to make and serve a case-made because of the death, shortly after the close of the trial, of the court reporter who took the evidence. At the hearing on the motion for a new trial on this ground plaintiff's counsel urged that a narrative statement of the evidence could be accurately made and the court continued the case to see whether this could be done. Thereafter, plaintiff's attorney submitted to opposing counsel a written statement of the oral testimony as he remembered it. Defendants' counsel filed a counterstatement setting out their contentions as to the nature of the testimony. Plaintiff's counsel then filed a response, but upon the hearing thereon agreed that for the purpose of making a case-made defendants' counterstatement as to the substance of the testimony might be taken as true. The court thereupon overruled the motion for new trial upon this ground. In deciding this appeal we have treated defendants' version of the testimony as true.

In this case most of the controlling facts were covered by the stipulation of the parties or the deposition. The oral testimony involved few issues and was relatively simple. A motion for a new trial on the ground of inability to make a case-made is addressed largely to the discretion of the trial court, and its ruling thereon will not be disturbed in the absence of an abuse of discretion. R. & R. Motor Co. v. King's, Inc., 169 Okla. 231, 36 P. 2d 900; Cherry v. Brown, 79 Okla. 215, 192 P. 2d 227, 13 A. L. R. 92. In view of the fact that most of the important facts were stipulated and defendants' version of the oral testimony was taken as true, we are unable to say that the trial court abused its discretion in denying the motion for a new trial on this ground.

7. Defendants finally contend that the trial court erred in refusing to grant a new trial because of newly discovered evidence. The new evidence was that one lessor in the neighborhood permitted water to be taken from his land for use on an adjoining lease without making any charge therefor, and that L. T. Miller, the wife of one of the witnesses at the trial, was the owner of four water right leases covering land near that here involved, and for which she paid the owners the sum of $50 to $75 per year. Two of these leases were on record in Caddo county at the time this case was tried. The evidence, if admissible at all, was merely cumulative and no showing was made that the same could not have been discovered prior to trial by the exercise of proper diligence. The trial court did not commit error in overruling such motion. Ball v. Fleshman,

183 Okla. 634, 83 P. 2d 870; Patterson v. Myers, 183 Okla. 601, 83 P. 2d 846.

The defendants made other assignments of error, but they involve the same questions as those covered by the assignments we have discussed.

Judgment affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, BAYLESS, WELCH, and DAVISON, JJ., concur. OSBORN and ARNOLD, JJ., absent.