**MACK OIL COMPANY, a corporation,
Plaintiff in Error,**

**v.**

**Mamie Lee LAURENCE, Executrix of the
Estate of R. M. Laurence, deceased,
Defendant in Error.**

**No. 40197.**

Supreme Court of Oklahoma.

Feb. 25, 1964.

Cund & Garvin, Duncan, of counsel, Henry C. Bonney, Duncan, for plaintiff in error.

Dyer & Dyer, Ardmore, for defendant in error.

BERRY, Justice.

Plaintiff, executrix of R. M. Laurence, deceased, brought this action against the corporate defendant, lessee and operator of an oil and gas lease, seeking an accounting and judgment for money determined to be due by reason of defendant's alleged wrongful sale of water from a well drilled by defendant upon the premises involved. The relevant facts are summarized hereafter.

The land involved comprises 30 acres described as: E/2 of NW/4 of SW/4 and SW/4 of NW/4 of Sec. 33, Township 4 South, Range 3 West, in Carter County. This was part of an original Choctaw allotment, conveyed by the original allottee in 1952 to one Milford by warranty deed providing " * * * all the surface and an undivided ½ mineral interest in and to" the described property.

Milford, joined by his wife, conveyed to one Rooney by warranty deed, containing the following reservation of the minerals:

"It is especially understood and agreed by the parties hereto that an undivided all mineral rights reserved interest in and to all of the oil, petroleum, gas, coal, asphalt and all the other minerals of every kind or character, in and under and that may be produced from the above lands, * * *"

Thereafter the Rooneys conveyed to plaintiff's decedent by warranty deed, reciting that same conveyed "the surface rights only". The habendum clause stated: " * * *, Except: all mineral rights being reserved by prior owners."

Plaintiff alleged that during June, 1958 the defendant drilled a water well upon the land involved, and thereafter produced and sold water therefrom to other parties for use on other property. Further, defendant had retained money received from these sales, which money belonged to plaintiff. Plaintiff prayed defendant be required to account for all sums thereby received, for judgment against defendant therefor and such other relief to which plaintiff might be entitled.

Defendant answered by general denial, other than specifically admitting its presence upon the land involved as operator under an oil and gas lease; drilling of an oil and gas well upon the premises and also drilling of a water well to procure water for development and operations, and use of the water for such purpose; receipt of a release from plaintiff's decedent for development damages, exccuted prior to defendant's entry. Defendant further denied plaintiff's decedent held any interest in any minerals underlying this land and therefore lacked the right to produce or utilize any of the minerals.

The issues raised by the pleadings were tried to the court without a jury. The evidence is not of controlling importance to the issues involved in this appeal, and merits only incidental reference hereafter. At the trial the parties stipulated the water was sold for use elsewhere than upon the property involved for varying sums totaling $970.00. The proof showed plaintiff expended $890.53 drilling the water well.

After trial of the case the matter was submitted for consideration upon written briefs. Thereafter the trial court entered judgment finding the issues for plaintiff and entering judgment for $970.00 for water sold, interest and costs. Defendant has appealed from such adverse judgment. The assignments of error are argued under three propositions. However, we are of the opinion disposition of the basic issue obviates need for extended discussion of other issues.

Defendant's principal contention is that water is a mineral which should be included in a reservation of all minerals. The argument may be summarized thus: statutes governing interpretion of contracts (15 O.S.1961 §§ 154–165), require that effect be given to each word and clause contained in the instruments of conveyance involved; this Court heretofore has declared that, in a technical sense, water is a mineral (Vogel et al. v. Cobb, 193 Okl. 64, 141 P.2d 276, 148 A.L.R. 774); the conveyance from Tilford to Rooney, plaintiff's immediate grantor, contained the provision " * * * undivided all mineral rights reserved interest in and to all of the oil, petroleum, gas, coal, asphalt and all other minerals of every kind or character * *." Thus, in view of the foregoing matters, the mineral deed is to be construed as making a dual reservation, first of all oil, gas, petroleum, etc; and secondly, of all mineral rights. Therefore, although water would not be included in the reservation of

oil, gas, etc. it must be construed as having been included in the reservation of "all mineral rights"; and, since under the Vogel case, supra, water technically is a mineral, by inference such decision supports the argument that water should be included in a reservation of all mineral rights.

Defendant does not contend plaintiff did not own any of the water underlying the property involved. However, defendant does assert the plaintiff owned only that portion of the water thereunder which was necessary to sustain the useful and beneficial enjoyment of the surface of the property. Particular mention is made of this argument for the reason that, in view of the conclusion reached herein, such argument will be alluded to hereafter.

Initially it should be stated that the present controversy could be resolved satisfactorily upon other grounds. We are of the opinion, however, that the inherent importance of the question presented here for the first time, merits consideration. Prior decisions dealing with related phases of the problem as to what estate is preserved by a conveyance reciting an exception or reservation of all the minerals, are neither harmonious, of controlling import, nor readily reconciled. The variances and discrepancies appear at some length in the footnotes to an excellent article appearing in 12 Okla.L.Rev. 499. The diversity of views is impressive. In Mo. Pac. R. R. Co. v. Strohacker, 202 Ark. 645, 152 S.W.2d 557, the court held that reservation of "all coal and mineral deposits in and upon said land" excluded oil and gas from the conveyance. But, in Carson v. Mo. Pac. R. R. Co., 212 Ark. 963, 209 S.W.2d 97, 1 A.L.R.2d 784, that court determined the same reservation excluded bauxite, the aluminum-producing clay formation.

In Armstrong v. Lake Champlin Granite Co., 147 N.Y. 495, 42 N.E. 186, "all the mineral and ores" was held to include granite. In Brady v. Smith, 181 N.Y. 178, 73 N.E. 963, "all mines and minerals" was held not to include limestone. However, in White v. Miller, 200 N.Y. 29, 92 N.E. 1065,

"exception of mines and minerals" in the grant was held to include gypsum.

And in Gulf Prod. Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, that court held an easement to take water "which is a mineral" constituted an encumbrance. But, in Fleming Foundation v. Texaco, Inc. (Tex.Civ.App.) 337 S.W.2d 846, the court held that although technically water was considered a mineral, the question whether same was to be treated as a mineral within meaning of a deed wherein reservation of minerals was made is a question of fact to be determined in the particular case. And, that court further concluded that water is not a thing of like kind to oil and gas.

In Horse Creek Land & Min. Co. v. Midkiff, 81 W.Va. 616, 95 S.E. 26, that court defined minerals as " * * * is understood to include every inorganic substance which can be extracted from the earth for profit, whether it be solid, as stone, fire clay, the various metals and coal, or liquid, as, for example, salt and other mineral waters and petroleum oil, or gaseous, unless there are words qualifying or limiting its meaning, or unless from the deed, read and construed as a whole, it appears that the intention was to give the word a more limited application."

The decisions from this Court are not subject to complete reconciliation. In the early case of Wolf et ux v. Blackwell O. & G. Co., 77 Okl. 81, 186 P. 484, this Court applied the rule of ejusdem generis to an oil and gas lease which provided for "all the oil, gas, and other minerals". Thus the general words of the grant were construed to apply only to the minerals of the same general character or class as those enumerated. However, the same decision reiterated the rule that:

"However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

No particular difficulty seems to have been encountered in matters involving the problem until the decision in Vogel et al.

v. Cobb, 193 Okl. 64, 141 P.2d 276, 148 A.L.R. 774. Therein the court based the conclusion reached upon the rule of ejusdem generis, but in so doing stated (p. 280 of 141 P.2d): "While it may be conceded that water, in a technical sense, is a mineral, it does not follow that it will pass under ordinary mineral deeds such as those here involved."

Questions relative to the interest conveyed in an instrument which excepted one-fourth of mineral royalty retained and one-fourth of mineral royalty previously sold, were considered in Beck et al. v. Harvey et al., 196 Okl. 270, 164 P.2d 399. That case, although recognizing the rule of ejusdem generis, considered authorities from other jurisdictions in declaring that, although commercial gravel belonged to the mineral kingdom and is similar by nature, it is not to be regarded as a mineral.

More recently, in Cronkhite v. Falkenstein (Okla.), 352 P.2d 396, this Court again applied the rule of ejusdem generis in deciding that a mineral deed which conveyed "oil, gas and other minerals" did not convey gypsum which underlaid the land conveyed. In this decision, however, the Court noted that although gypsum technically was a mineral, this was not a solution to the problem inasmuch as the real inquiry concerned the intention of the parties to the transaction. The identical situation herein necessitates consideration of matters other than the form of the reservation in resolving the inquiry.

The most analogous decision found considering comparable issues is the case of Fleming Foundation v. Texaco, Inc., supra. Therein the identical issues confronted that court, although the reservation in question permitted application of the rule of ejusdem generis. Fleming purchased a large tract of land, the grantors reserving one half of all oil, gas and other minerals. Fleming thereafter conveyed to a third party the surface only, reserving and excepting all interest and estate owned in the oil, gas and other minerals. This third party then sold part of the land to LeDerer, but ex-

cepted the minerals. LeDerer thereafter leased part of the land to Texaco for exclusive purpose of finding, producing and transporting of water. Texaco drilled wells, produced and used considerable water, and Fleming then sued to recover damages for alleged wrongful conversion. The trial court denied relief upon the ground that reservation and exception of oil, gas and other minerals did not constitute reservation of the water, and none of the grantors in any of the conveyances retained ownership of the water under the land involved.

In affirming the trial court's judgment denying Fleming relief, the Court declared that the conveyances involved did not constitute reservation or exception of the water, and none of the grantors involved retained any ownership therein. The appellate court considered and disposed of two questions which are germane to the present inquiry. First, what is included in a conveyance which sets over to the grantee the "surface only"? Second, where a conveyance purports to reserve all the minerals, is water included as one of the minerals reserved?

The court recognized the ambiguous nature of the term "surface", and discussed case and text authorities to the effect that definition of such term is not subject to universal application. Ramage v. South Penn. Oil Co. 94 W.Va. 81, 118 S.E. 162, 31 A.L.R. 1509; 58 C.J.S. Mines and Minerals § 3; Marquette Cement Mining Co. v. Oglesby Coal Co., 7 Cir., 253 F. 107. The latter decision contains this statement:

"The word 'surface' in mining controveries means that part of the earth or geologic section lying over the minerals in question, unless the contract or conveyance otherwise defines it. It is not merely the top of the glacial drift, soil, or the agricultural surface."

Upon the basis of the quoted definition the Texas court pointed out that if "surface only" were intended as the portion of the land capable of being utilized for

agricultural pursuits then no necessity would have existed for the grantee (Fleming) to have reserved the minerals since Fleming would have owned the oil, gas and other minerals without specifically excepting them in the deed. The court concluded the grantor used the word "only" to emphasize that the grantor *was not acquiring any minerals.* Hence correct interpretation of such conveyance was that it transferred all the grantor's interest in the land except one half of the minerals which were severed from the surface estate. The principle of severance of the mineral and surface estates has been recognized as a rule of universal application. Barker v. Campbell-Ratcliff Land Co., 64 Okl. 249, 167 P. 468, L.R.A.1918A, 487; 29 A.L.R. 591.

By statute and judicial pronouncement, the rule is that the intention of the parties to a conveyance is of paramount importance. And, this intention is to be ascertained from the entire instrument, considering each part and viewing it in light of circumstances existing at the time of execution. 15 O.S.1961 § 152; Dwelle v. Greenshields (Okl.), 305 P.2d 1038; Lahman v. Bassel (Okl.), 373 P.2d 245. We are of the opinion that in the conveyance of "surface only" of property wherein oil, gas and other minerals theretofore had been reserved, the portion of the land which covers and envelops the minerals comprises the "surface" of the land involved. And, such conveyance vests in the grantee the same rights to use of the land conveyed as are exercised by fee owners, subject only to the right of the grantors to remove the minerals reserved.

The remaining inquiry involves consideration of the conveyance from Milford to plaintiff's immediate grantor by an instrument which recited "all mineral rights reserved * * *."

Defendant stands upon the proposition that water is a mineral, and is so recognized by this Court. Therefore, since not subject to exclusion under application of the rule of ejusdem generis, the term "all

minerals" appearing in the conveyance to plaintiff's grantors, must be construed as having reserved the water, so that plaintiff acquired no right therein under a deed conveying "surface only". In this connection we note defendant's recognition of the qualification expressed in Cronkhite v. Falkenstein, supra, that the rule of ejusdem generis is inapplicable where the result would be contrary to the clear intention of the parties.

In this respect we consider the reasoning of the Texas court in the Fleming case, supra, most persuasive. Recognizing that intention of the parties is of paramount consideration in determining what was intended by "other minerals", that court stated at p. 851 of 337 S.W.2d:

"* * * In construing a reservation of minerals in a deed regard must be had, not only to the words used to describe the things reserved, but to the relative portion of the parties interested, and to the substance of the transaction or arrangement which such deed embodies. There is no question in this case but what the real intention of the appellants was to retain the minerals. Neither is there any doubt about water being technically a mineral. We think the question whether a given substance is or is not a mineral within the meaning of the deeds in which the reservations are made is a question of fact to be decided according to the circumstances of the particular case. * * *"

In Erickson v. Crookston Waterworks, P. & L. Co., 100 Minn. 481, p. 485, 111 N.W. 391, p. 393, 9 L.R.A.,N.S., 703, is this statement:

"* * * While water is to be defined as a mineral, the rules of law as to its use must logically vary from those applicable to coal, ore, and the like. Water is a fluid, and mobile, a 'fugitive.' * * * The analogy to natural gas and oil is more apt. Their natural use, however, is as merchandise. * * The whole subject will be found re-

viewed and considered in Ohio Oil Co. v. Indiana, 177 U.S. 212, 20 S.Ct. 585, 44 L.Ed. 740. Water, although in large measure a commodity of commerce, is essential to the natural use of land for agriculture and other purposes, and to the support of human life itself. A rigid rule, applying to underground waters the law applicable to surface waters in various jurisdictions, might work insufferable hardship, and put the control of an element as necessary to life as air itself into the hands of a monopoly. In the nature of things there are parts of the country, as in this state, where well-defined bodies of water exist as unmistakably under the ground and out of sight as upon the surface of the ground. Under a proper system of legal rules this 'gift of Providence' may be made to support agriculture, appropriate industries, and human life. Arbitrary and artificial restrictions might readily make large areas uninhabitable save by an unnatural tribute to exclusive individual control."

At this point we advert to the defendant's argument earlier mentioned, to the effect defendant did not contend plaintiff did not own any water under the land, since plaintiff owned and was entitled to use such amount of water as would be necessary to useful and beneficial enjoyment of the surface. This argument necessarily had to be advanced in view of the impossible situations which "arbitrary and artificial restrictions" undoubtedly would foster. No reason is given, nor authority cited, supporting the statement that a surface owner would be entitled to enough water to permit useful and beneficial enjoyment of the surface. The specious nature of this argument is revealed in the fact that if the conveyance be interpreted to have reserved "all minerals", then the plaintiff would have no more right to produce and use the water than he would to drill for and produce all the oil and gas which might be useful and beneficial to enjoyment of the surface.

■ We approve and adopt the reasoning in Fleming Foundation v. Texaco, Inc., supra, in that determination of whether exceptional substances are to be considered as minerals in a particular case, must turn upon what the word denoting the substance ordinarily is understood to mean in the meaning and intention (vernacular) of the particular industry, the commercial world and the landowners themselves at the time of the conveyance. See Heinatz v. Allen et al., 147 Tex. 512, 217 S.W.2d 994.

■ Instruments of conveyance are construed most strongly against the grantor. Consistently this Court has adhered to the rule announced in Palmer v. Campbell (Okl.), 333 P.2d 957, wherein Syllabus 1 states:

"A deed of conveyance which contains no apt words to indicate there was an intent on the part of grantor to reserve unto himself any interest in said property, must be construed to convey to grantee all of the interest vested in grantor at the time of the execution of deed. 16 O.S.1951 § 29."

See also authorities therein cited.

■ Nothing in the conveyances to plaintiff's predecessors in title evidenced any intent to reserve or except the rights to subterranean waters from such conveyances. To construe what was meant by reservation of "all the minerals" we apply the test above mentioned. Under this test clearly none of the parties in the several conveyances intended to sever the water rights and convey only the agricultural surface of the land. Had this been within the understanding and intent of the parties it could have been accomplished quite easily by inclusion of apt language within the instruments.

We hold the conveyance to plaintiff's immediate grantor which recited "all mineral rights reserved" was not intended, and did not reserve the natural waters underlying the land and thereby sever the water from the surface of the realty involved. However, the fact that conveyance of the sur-

face carried with it both the soil and underground water did not invest plaintiff (grantee) with such possessory right therein as to deprive holders of the mineral rights herein conveyed to use of water found under the land for purposes necessary and incidental to its own operations thereon. See Stradley v. Magnolia Petroleum Co., (Tex.Civ.App.), 155 S.W.2d 649.

■ Defendant also contends that, because the water well in question was drilled in good faith, it should be permitted to recover the expenses of drilling, completing and equipping such well. The terms of the lease granted defendant the right to free water for use in the operations. In Vogel et al. v. Cobb et al., supra, a similar contention was urged in defense of lessee's use of water upon other land. Therein we affirmed the landowner's right to recover the value of water used off the premises, for the stated reason that a lease provision granting the lessee free water did not establish any right to supply water for use off the lease.

As respects defendant's argument relative to recovery of expenditures for drilling, completing and equipping the water well, we do not consider the question here for determination at this time. We do note, however, that defendant urges the general rule, as to the measure of damages to be applied to an innocent trespasser's liability for oil and gas produced as controlling. See Barnes v. Winona Oil Co., 83 Okl. 253, 200 P. 985, 23 A.L.R. 189, and cases therein cited. The legal principle announced is neither analogous nor applicable to the present appeal. Neither is the argument that drilling of the water well conferred such benefit upon plaintiff that credit should be allowed defendant for the costs of such well.

In the case now before us the defendant had the right to secure water on the premises for use in development and operation of the leasehold. This could have been accomplished by purchase off the premises, by purchase from plaintiff from existing sources, or by drilling and producing as was done. The completed well, so long as used solely for defendant's operations under the lease, belongs solely to defendant. Upon termination of operations defendant will be privileged to make disposition of the well in the manner determined to be most advantageous. Under these circumstances any question concerning the value of the producing water well is premature.

Judgment affirmed.