Gerald Mitchell RIEDT et al., Appellants,

v.

ROCK ISLAND IMPROVEMENT COMPA-
NY, a corporation, and Pan American Pe-
troleum Corporation, a corporation, Appel-
lees.

No. 44810.

Supreme Court of Oklahoma.

March 5, 1974.

Rehearing Denied April 23, 1974.

John B. Baumert, William S. Horton,
McAlester, for appellants.

Norton Standeven, Andrews, Mosburg,
Davis, Elam, Legg & Kornfeld, Wayne B.
Snow, Savage, Gibson, Benefield & Shel-
ton, Oklahoma City, for appellees.

LAVENDER, Justice:

The plaintiffs brought an action to quiet
title to oil, gas and other minerals, except
coal and asphalt, underlying approximately
fifty-two acres of land, against the Rock
Island Improvement Company, a corpora-

tion, and to cancel two separate oil and gas leases by the defendant to its co-defendant, the Pan American Petroleum Corporation. They now appeal from an adverse judgment that holds for defendants without a statement of findings or conclusions of law. It provides that the Rock Island Improvement Company is the owner of all the oil, gas, and other minerals (except coal and asphalt) in, to, and under the land concerned, such ownership being subject, however, to the oil and gas leases and leasehold estates of said lands which are owned by the Pan American Petroleum Corporation.

The plaintiffs are successors in title to the interests of The Old Forty Coal Company which owned the coal and asphalt lying beneath the land, and which later acquired ownership of the "surface" of the land by quit claim deed in 1941 from the defendant Rock Island Improvement Company. The primary issue is whether the 1941 conveyance describing: "The surface of the following described land: * * *," conveyed the oil, gas and other minerals, except coal and asphalt. Plaintiffs say that it did, and point out that in 1925 the defendant Rock Island Company acquired patent to the land, which had been segregated coal and asphalt lands of the Choctaw and Chickasaw Nations, pursuant to an act of Congress in 1912 authorizing sale of the surface of the lands and providing in part,

"The surface herein referred to shall include the entire estate save the coal and asphalt reserved."

They say that this necessarily included the oil, gas, and other minerals, and that when the "surface" was sold to The Old Forty Coal Co., that company acquired the oil, gas, and other minerals for the reason that the surface of the land as defined in the act had become a covenant running with the land.

Plaintiffs say that correspondence prior to the sale shows that the Rock Island Improvement Company desired to sell all their interest in the land to the Old Forty

Coal Co. except a railroad track or tracks thereon and the *surface of the ground* within fifty feet of the center line of the grantor's tracks as now located. (Emphasis by plaintiff) They say that their position is that it was the intent of the grantors to convey everything except that portion specifically excepted. They say that the ultimate question is the interpretation of the act of Congress authorizing the sale of the Indian land.

Plaintiff's proposition No. 1 is:

(A)  The words of grant in the patent mean the same thing in subsequent deeds covering the identical real property.

(B)  The conveyances from Rock Island Improvement Company to Old Forty Coal Company, dated October 23, 1941, conveyed the oil, gas, and other minerals the same as the original patent.

We do not agree that the sale of the surface of the land concerned in this case conveyed the oil, gas, and other minerals, except coal and asphalt, as contended by plaintiffs.

In setting forth their position in their reply brief, plaintiffs quote a part of a paragraph of the act of Congress, which quote we enlarge upon for clarity of this opinion:

"Sec. 7. That when full purchase price for any property sold herein is paid, the chief executives of the two tribes shall execute and deliver, with the approval of the Secretary of the Interior, to each purchaser an appropriate patent or instrument of conveyance conveying to the purchaser the property so sold, and all conveyances made under this act shall convey the fee in the land with the reservation to the Choctaw and Chickasaw tribes of Indians, of the coal and asphalt in such land, and shall contain a clause reciting and containing the reservations, restrictions, covenants, and conditions under which the property was sold, as herein provided, and said conveyances

shall specifically provide that the reservations, restrictions, covenants and conditions therein contained shall run with the land and bind the grantees, successors, representatives and assigns of the purchaser of the surface: Provided . . . [right of early payment] . . ."

Plaintiffs say that this language is contained within the patent to defendant Rock Island, and call attention to a portion of the patent that follows the legal description of the land, which portion is as follows and is enlarged upon by us for clarity:

"* * * and provided further, that all the reservations, restrictions, covenants and conditions herein contained or provided for in the Act of Congress of February 19, 1912 (37 Stat.L. 67), under which the above mentioned *surface* was sold, shall run with the land and bind the grantee or grantees herein, their successors, representatives and assigns." (Emphasis by plaintiff)

They say that this incorporates the Act of 1912 and is a part of the granting clause of the patent. They say that references to "surface" contained in the granting clause and elsewhere in the patent, and in the act of Congress, made the term "surface" a covenant running with the land and thereby inject the terms of the act into any subsequent coveyance and make the terms part of that conveyance.

Plaintiffs then further say in their Reply Brief that they agree that the ordinary deed conveying the surface does not operate to convey the oil, gas, and other minerals, but that this was no ordinary conveyance which specified the surface, but one which under the act of Congress was defined to include the oil, gas, and other minerals, save coal and asphalt. They say that there is no uncertainty or ambiguity in the deed, but that the deed grants exactly what the defendant Rock Island Improvement Company had acquired, save the coal and asphalt and a reservation for railroad trackage, the surface of ground for which was to not be disturbed by the grantee. They say that the case was not tried on the theory that the deed was ambiguous.

Plaintiffs say that had Rock Island intended to reserve the oil, gas, and other minerals it would have done so when it reserved the railroad trackage, and they quote from Bryan v. Everett (1961), Okl., 365 P.2d 146. "The grantor is presumed to have made all reservations he intended to make and he cannot derogate from a grant by showing that some reservation was intended but not expressed", and other cases.

The defendants say that the patent was a conveyance of the full interest in the lands with the reservation of the coal and asphalt; that the Old Forty deed was a conveyance of the surface; that no mineral rights were conveyed with the Old Forty deed; and that there was no reservation of minerals in that deed because none was necessary [only the surface having been conveyed].

■ Plaintiffs also state in their Reply Brief that their case is predicated upon the provisions of the referenced act of Congress. If we were obliged to make our holding solely on that basis and statements of plaintiffs as aforesaid, thereby looking only to terms of the act and deed, we would have to hold against plaintiffs without more. This is because we see here a Congressional act authorizing sale of Indian land save for asphalt and coal reserved, subject to certain reservations, restrictions, covenants and conditions required by the act which were to run with the land, and are set forth in the patent. Those matters concern the rights of the two Indian Nations, their grantees, assigns and successors, which are found within the patent and are followed by the proviso pertaining to them that is quoted above. These are the things that in this patent ran with the land—not the term "surface" with its inclusion of the entire estate save the coal and asphalts reserved. The principle of severance of the mineral and surface estates has been recognized as a rule of uni-

versal application (Mack Oil Company v. Laurence (1964), Okl., 389 P.2d 955), and we do not find that Congress placed a restriction on it in this case by welding the surface to the remainder of the estate, other than coal and asphalt, to the extent that a sale of the surface would convey with it such remainder of the estate. We have searched the language of the statute and cannot agree with plaintiffs' view. No rule of interpretation or construction of the statute is involved.

This, in our view, is the effect of the Congressional Act establishing covenants that ran with the land, but a question remains of what was conveyed by Rock Island's sale of the surface—irrespective of the absence of a covenant as contended by plaintiff.

Plaintiffs' Propositions II and III are:

"PROPOSITION NO. II: The interpretation or meanings that are given to land conveyances under the Congressional Act of February 26, 1912 on deeds and patents covering lands within the same Federal District Court are binding and should be followed in the Oklahoma Courts.

"PROPOSITION NO. III: The defendant, Rock Island Improvement Company, as grantor and drawer of the deed has the instrument construed *most strongly* against said defendant."

Initially, we observe that 16 O.S.1971, § 29 provides that every estate in land which shall be granted, conveyed or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words. Of course the grantor could convey only that which he has, but in this case the grantor, who conveyed by quit claim deed, did have the fee, save coal and asphalt. Therefore, if "surface" is not inherently a word of limitation, there was a conveyance as plaintiffs contend, for under this statute there must be in the real estate deed appropriate language expressly reserving some interest in and to the grantor, or the grantor's entire interest passes. (Erwin v. Poole (1968),

Okl., 446 P.2d 601, a warranty deed case). The quit claim deed here "granted" and "conveyed" forever, barring the grantor Rock Island Improvement Company from thereafter claiming any right or title to the said premises or any part thereof. This is in accord with 16 O.S.1971, § 18, providing that a quit claim deed, made as is this one, conveys all of the right, title, and interest of the maker in and to the premises therein described. The foregoing leaves open the extent of "premises therein described," i. e., conveyed, or conversely, that part reserved by express words, and that is the matter of contention.

As indicated hereinafter, we find that the word "surface", under the circumstances of this case, is a word of limitation. In arriving at this conclusion we have been carefully aware that instruments of conveyance are construed most strongly against the grantor (Mack Oil Company v. Laurence, supra) and have considered whether apt words reserving or excepting out interests from the surface conveyed are present in the deed (Mack Oil Company, supra, citing Palmer v. Campbell (1959), Okl., 333 P.2d 957), and, if not, whether they are required by 16 O.S.1971, § 29, supra, for the cited cases require apt words of reservation or exception, but none concern a conveyance of land described by the self-limiting word "surface" as here. Further, we have applied the "four corners" or "entire instrument" doctrine (Erwin v. Poole, supra) in determining support for plaintiffs' case. However, we also find it appropriate to seek the intent of the parties dehors the instrument, and therefore look to pertinent statutes and principles that follow.

15 O.S.1971, § 160, provides that the words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed. 15 O.S.1971, § 164, provides that however broad may be the terms of a contract, it extends only to

those things concerning which it appears that the parties intended to contract. And a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates (15 O.S.1971, § 163).

In determining what the parties intended by a contract, the court should, as far as possible, place itself in the position of the parties when the contract was made, and to the extent that their mutual intention is ascertainable and lawful, give effect thereto. King-Stevenson Gas & Oil Co. v. Texam Oil Corp. (1970), Okl., 466 P.2d 950. It is the primary concern of the parties to which we will look (Panhandle Co-operative Royalty Co. v. Cunningham (1972), Okl., 495 P.2d 108, 115), recognizing that it is settled law in this jurisdiction that the cardinal rule to be applied in construing deeds is to ascertain the intent of the parties· (Birmingham v. McCoy (1961), Okl., 358 P.2d 824) as that intent may be discerned from the instrument itself, taking it altogether, considering every part of it, and viewing it in light of the circumstances existing at the time of its execution. Lahman v. Bassel (1962), Okl., 373 P.2d 245. Dwelle v. Greenshields (1957), Okl., 305 P.2d 1038.· In so doing, all rights claimed by the grantee which are not conferred in direct terms or by fair implication are to be withheld (Cronkhite v. Falkenstein (1960), Okl., 352 P.2d 396), giving due regard to the mandatory provisions of 16 O.S.1971, § 29, supra, regarding conveyance of a fee unless the conveyance is limited by express words. In sum, assuming that the word "surface" as used in the deed here is uncertain, and this· court has recognized that it has been so held by other courts in different situations, Mack Oil Company v. Laurence, supra, the modern tendency is to treat all uncertainties in a conveyance as ambiguities to be clarified by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time.

(23 Am.Jur.2d 159), and that is what we shall do.

Looking to the instrument itself, 54 Am. Jur.2d, § 109 says that which may appear to be the obvious, that a surface deed is an instrument designed to convey the surface alone; however, although obvious, this may be an indication useful in ascertaining the intent of the parties from the common term, "surface." But, the word takes on different meanings in different situations, for example, in Ramage v. South Penn Oil Co. (1923), 94 W.Va. 81, 118 S.E. 162, the court's syllabus states:

"The term 'surface,' when used as the subject of a conveyance, is not a definite one capable of a definition of universal application, but is susceptible of limitation according to the intention of the parties using it; and in determining its meaning regard may be had not only to the language of the deed in which it occurs, but also to the situation of the parties, the business in which they were engaged, and to the substance of the transaction."

Again, the word has also been recognized as one of limitation, that is, something less than "land" with its inclusive qualities (Dolan v. Dolan (1911), 70 W.Va. 76, 73 S.E. 90; see A.L.R. Annotation, 31 A.L.R. 1530 following Ramage opinion at p. 1509). Other observations of what "surface," or "surface" with other descriptive words, may refer to are found in Yuscavage v. Hamlin et al. (1958), 391 Pa. 13, 137 A.2d 242 where "surface" equates to "land" because of other references to "land" in the deed; in 40A Words and Phrases p. 448—case summaries; in Tate v. United Fuel Gas Co. et al. (1952), 137 W.Va. 272, 71 S.E.2d 65—where the Sup.Ct., W.Va. adverted to earlier holdings that for the purpose of contrasting the terms "minerals" and "surface," the word "surface," when used without any qualifying phrase in a deed, ordinarily signified only the superficial part of land; in 12 Oklahoma Law ·Review 499 (1959); and in Fleming Foundation v. Texaco, Inc., cited in Mack Oil

Company v. Laurence, supra, wherein the term "surface only" was used.

■ We go then to the fact situation, bearing in mind that the principle of severance of mineral and surface estates has been recognized as a rule of universal application (Mack Oil Co. v. Laurence, supra) and a severance was possible here. And, that there was a severance is clear. In evidence are twelve exhibits comprising letters and telegrams that reflect negotiations between the Old Forty Coal Company, represented by Mr. Mitchell, and the representative of the defendant Rock Island Improvement Company. All of these documents concern the conveyance of 52 acres of "surface" land for the purpose of strip-mining the coal thereunder, the consideration being $178.00, which Old Forty considered a fair price considering the location of the land and the fact that the land had been the scene of strip-mining operations years earlier and had no value from an agricultural standpoint. There is testimony by Mitchell that at no time was there communication between himself and any officers of Rock Island in regard to mineral rights—oil and gas, and plaintiffs see this as an indication that the grantor did not intend to reserve such mineral rights. However, there is no question but that the intent of the parties was to convey the surface of the land, except that portion reserved for the railroad tracks for strip-mining purposes—a fact acknowledged by Mr. Mitchell in testimony at the trial. "Surface," then, in this case had a limited meaning as understood by the parties, and the conveyance was limited by that express word. This was compliance with requirements for limitations as found in 16 O.S. 1971, § 29. The quit claim deed to the Old Forty Coal Company from which plaintiffs deraign their titles did not convey oil, gas, and other minerals, save coal and asphalt, as contended by them.

In making the foregoing conclusion we have considered the judgment and accompanying court instructions to arbitrators in the unreported case of Greenwood v. The Pacola Company rendered by the federal district court for the Eastern District of Oklahoma, as they are found in the file, and discussed in plaintiffs' briefs, and do not find an inconsistency with the above. That judgment reflects that Indian land was patented to one Goza, with coal and asphalt reservations, this being pursuant to the same Congressional Act as in the instant case. The coal and asphalt deposits were then sold to the United States who leased the same to The Pacola Company. Plaintiffs in our case say that the property (the land save and except coal and asphalt) in Greenwood v. The Pacola Company was conveyed by Goza to Ada Ward, who then conveyed it to the Greenwood plaintiffs by Warranty Deed *without exceptions.* (Emphasis by plaintiffs) The Pacola Company notified the surface owners that they wanted to acquire certain acres of surface of the land in order to mine the coal and asphalt beneath them. The parties could not agree on a price, arbitrators were appointed, as provided for in the aforesaid act, and hence the court's instructions to them. Those instructions stated that the plaintiffs (surface land owners) owned the absolute fee simple title to the property, save and except the coal and asphalt in upon, and underlying the same. Also, that the coal company (Pacola), in taking the land for mining operations, acquired the entire estate, save and except the coal and asphalt which still belonged to the United States (and leased to Pacola). The court stated that the coal company acquired the same and identical ownership which the plaintiffs therein had before the land was taken for mining purposes, and if the land had any market value for oil and gas mining purposes, the same should be taken into consideration by the arbitrators, for The Pacola Company had acquired all oil, gas, and all other minerals except coal and asphalt in such lands. Plaintiffs in the instant case say that Rock Island owned the surface and sold the same by Quit Claim Deed. They find the two cases analogous, on the basis, as we understand them, that since the vendee coal

company, in Greenwood v. The Pacola Company, in acquiring the land surface, acquired as part of the entire estate the oil, gas, and all other minerals therein, except the coal and asphalt; then, similarly here, The Old Forty Coal Co., in acquiring the surface of the land, acquired the oil and gas and other minerals therein, except the coal and asphalt.

The difficulty with the aforesaid parallel is that in Greenwood v. The Pacola Co., as we understand the facts to have been, the court did not have before it, anywhere in the chain of title or in the taking of the surface by the coal company pursuant to the act, a severance of the "surface" as understood by laymen dealing at arms length, as in the instant case, but had a taking of the surface as referred to in the act which, as we know, included the entire estate save the coal and asphalt reserved. We do not find the two cases analogous.

Judgment affirmed.

DAVISON, C. J., and BERRY, HODGES, BARNES, SIMMS and DOOLIN, JJ., concur.