Ollie Gilliland HOLLAND et al., Appellees,

v.

The DOLESE COMPANY and Roger Dolese,
a co-partnership, d/b/a Dolese Bros.
Co., Appellants.

No. 47156.

Supreme Court of Oklahoma.

July 1, 1975.

Rehearing Denied Sept. 23, 1975.

Hensley & Neuwirth, Lawton, for appellees.

Custer W. Sandlin, Oklahoma City, for appellants.

LAVENDER, Justice:

Ollie Gilliland Holland, Alma Gilliland Holland, Vivian Gilliland Woods, Barbara Scherler, and Ralph D. Gilliland, with certain spouse subsequently held not to have an interest (appellees), sought an accounting of The Dolese Company and Roger Dolese, a Co-Partnership, d/b/a Dolese Bros. Co. (Dolese), appellants for limestone commercially quarried and removed from real property in Comanche County, at or near what is commonly called Richards Spur. Plaintiffs also asked for a partitioning of the mineral rights.

The legal title of the real property (NE¼, Sec. 36, T 4 N, R 12 W) was stipulated and is not an issue. Dolese owns the real property less a reserved mineral right. That ownership includes the surface and one-half the mineral rights. Appellees own one-half the mineral rights.

The real property had been owned by David Gilliland and his wife. August 2, 1929, those owners executed a lease agreement with Henry Dolese. This allowed Henry Dolese to quarry "all kinds of stone." It expressly did not include the right to explore, take or remove oil or gas.

It was for twenty-five years and required, along with other sums, the annual payment of $83.33. The agreement contained a provision, declared to be both a duty and right, for purchase of the real property by the lessee upon commencement of the quarry operations upon the premises. As heirs of the lessors and through conveyances among themselves, plaintiff-appellees became the owners of the real property. By assignment Roger Dolese and presumably the co-partner defendant-appellant received the lessee's interest. Actual quarry operation was never begun under the lease.

In April and May, 1947, all the owners, through two like deeds with each deed executed by part of the owners conveyed the real property to Ward and wife, not parties to this action. The deeds contained identical language, "Subject to existing option to buy now held by Dolese Brothers and reserving one-half of the mineral rights * * *." Ward and wife conveyed that real property in February, 1949, to Dolese in a trade for another quarter section nearby. After having acquired the property and during the early 70's, Dolese began its quarry operations of limestone on the property. Suit filed in June, 1972, by appellees claimed an interest in the limestone through their ownership of one-half mineral rights, and sought an accounting and partition as against Dolese.

The trial court had before it by exhibits undisputed evidence that limestone was very generally a part of the soil and subsoil of this real property. Photographs of Dolese's quarry operations on or very near the involved real property show repeated outcroppings of the limestone on the surface of the land. An undisputed, and not objected to, interpretation of an aerial photograph of the quarry area, including part of the involved real property, established these same repeated and dominant limestone outcroppings. The evidence showed complete destruction of the surface for livestock grazing purposes by the quarry operation. August 4, 1972, the Chief Mine Inspector of Oklahoma received an Opera-

tor's Reclamation Plan dated July 28, 1972. It reads in part:

"It is anticipated that this operation will be active for many years to come, and no reclamation can be planned or performed until a later time.

"The long range plan is to leave a portion of the quarried area as a water reservoir."

The quarried limestone was shown to be used as aggregate in concrete, surface material on secondary roads without other additives, general construction material and as agricultural limestone. Within the knowledge of the Dolese general superintendent of stone production, it had not been used in the manufacturing process of making cement, as opposed to aggregate material in mixing concrete.

The limestone here quarried was not an exceptional substance. It is not subject to the "true test" found in *Mack Oil Company v. Laurence,* Okl., 389 P.2d 955 (1964) of "what the word (minerals) means in the vernacular of the mining and mineral industry, the commercial world and the landowners at the time of the grant, and whether the particular substance was so regarded as a mineral." (Explanation added.) Here, as stated in *Mack Oil Company,* supra, "Mineral rights are to be interpreted according to their ordinary and natural meaning where there is no manifestation of an intention expressed in the deed to use them in a scientific or technical sense."

*Heinatz v. Allen,* 147 Tex. 512, 217 S. W.2d 994 (1949) states:

" * * * substances such as sand, gravel and *limestone* are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value, as for example sand that is valuable for making glass and limestone of such quality that it may profitably be manufactured into cement. Such substances, when they are useful only for building

and road-making purposes, are not regarded as minerals in the ordinary and generally accepted meaning of the word. (Cases cited.) The limestone on the land involved herein, having value only for building purposes, underlying most if not all of the land at varying and usually shallow depths, outcropping in all the ravines, sometimes found on the top of the surface and removed by quarrying after scraping off the overlying caliche or other top soil, is so closely related to the soil, so nearly a part of the very surface, the soil itself, that it is reasonably and ordinarily considered a part of the soil and as belonging to the surface estate rather than as a part of the minerals or mineral rights. (Cases cited.) (Emphasis supplied.)

Syllabus by this court in *Beck v. Harvey*, 196 Okl. 270, 164 P.2d 399 (1945) stated:

"The right to take sand and gravel from the premises is not included within the reservation in a conveyance of the realty reserving to the grantor the mineral royalty on said premises."

There this court rejected the strait-jackets of classification through commercial use or belonging to the mineral kingdom. The opinion relies heavily on an English Court of Appeals case, *Waring v. Foden*, 1 Ch. 276, 86 A.L.R. 969 (1932). In *Waring* it was held that sand and gravel were not "minerals" or "mineral substances" in the vernacular of the mining world, the commercial world, or landowners, and as sand and gravel constituted the ordinary soil of the district, it would be a negation of the substance of the transaction to hold that all sand and gravel, which were very generally a part of the soil and subsoil of this farm, and worked and gotten from the surface, were excepted from the grant and remained the property of the plaintiff.[1] *Beck,* supra, noted this rationale and adopted it.

Eugene Kuntz at 1 Kuntz Oil and Gas, Sec. 13.3 at page 305 et seq. discusses what substances are included within a grant or reservation of "minerals," apart from the oil and gas question. He criticizes the traditional approach of attempting to find an intent to include or exclude specific substance. The intent should be the general intention from the standpoint of enjoyment of the respective interest created. He states:

"* * * When a general grant or reservation is made of all minerals without qualifying language, it should be apparent that the parties intended to sever the entire mineral estate from the surface estate, leaving the respective owners of each estate with an estate which is enjoyable in a special manner. The manner of enjoyment of the mineral estate is through extraction and removal of substances from the earth, whereas the enjoyment of the surface is through retention of such substances as are necessary for the use of the surface, and these respective modes of enjoyment should be taken into account in arriving at the proper subject matter of each estate."

\* \* \* \* \* \*

"A limitation upon the mineral estate should be that only those substances can be removed without compensation to the surface owner which can be removed without unreasonable injury to the enjoyment of the surface, that is, without unreasonably interfering with the uses for which the land is adapted. If there is unreasonable injury to the enjoyment of the surface, compensation should be paid on the basis of the value of the land for surface purposes and not for mineral purposes. This approach does no violence to the intention of the parties."

In the case at bar, the limestone being quarried was a general part of the soil and subsoil. That limestone had no

---

1. See annotation following the reporting of *Waring v. Foden*, 86 A.L.R. 983, 989, discussing that case.

peculiar property so as to be rare and exceptional in character. It was not an exceptional substance and is comparable to sand and gravel. The quarry operation destroyed the surface for its normal uses, such as cattle grazing. The limestone was not included in the reserved mineral right. To hold otherwise, would negate much of the substance of the transaction with the Wards and their subsequent real estate trade with Dolese. It would destroy the general intent of enjoyment of the surface. The limestone is not a part of the minerals, under the reserved mineral rights in the deeds here involved.

Excluding the limestone from the reserved mineral rights is decisive of this case. Other issues raised on appeal need not be considered.

Reversed.

All the Justices concur.