**FIRST NAT. BANK OF LAWTON v. HUMPHREYS et al.**

No. 7959—Opinion Filed Oct. 9, 1917.

Rehearing Denied Nov. 6, 1917.

(168 Pac. 410.)

**1. Pleading—Answer—Judgment on Pleading—Objection to Evidence.**

When the only objections to the sufficiency of an answer consist of a motion for judgment on the pleadings, and afterwards an objection to the introduction of testimony in support of affirmative matters contained therein, every legal intendment is indulged in support of the pleadings attacked, and if by any legal and reasonable intendment the answer may be construed to state a defense, a counterclaim, or set-off, such motion and objection will not be sustained merely because the allegations are incomplete, indefinite, or mere legal conclusions.

**2. Appeal and Error—Sufficiency of Evidence.**

When the sufficiency of the evidence has been properly raised in the trial of a case and exceptions duly preserved, this court will not affirm a judgment of the trial court from which an appeal has been duly taken, unless the same is reasonably supported by the evidence.

**3. Bills and Notes—Judgment—Sufficiency of Evidence.**

Evidence in the instant case examined, and held not to reasonably support the judgment in favor of the defendant.

**4. Banks and Banking — Loans—Construction of Contract.**

If, for adequate consideration, a national bank makes a continuing contract to furnish such funds as are needed from time to time in conducting the business of another institution, the bank, under such contract, may be held only to furnish reasonable sums of money on terms and conditions consonant with sound business principles and within the limits governing such bank, prescribed by statute as the amount for which one individual may become indebted. Such bank has the right to refuse payment of overdrafts, and when the institution for whose benefit the contract was made is failing, and there is no adequate security for the repayment of funds requested or when such repayment is doubtful and precarious, the bank may curtail or refuse further advancements of money in accordance with reasonable and safe banking principles.

**5. Banks and Banking — National Bank Officers—Fiduciary Capacity—Loans.**

The officers of a national bank in handling its funds are acting in a fiduciary capacity, and cannot make loans or furnish money contrary to law or in such improvident manner as would imperil the business and funds intrusted to them.

**6. Banks and Banking — Loan Contract — Statute.**

Those contracting with a bank for the loan or furnishing of money are charged with notice of the statutes, and the general principles of law governing such institutions, and the same are necessarily embraced in any contract so made.

(Syllabus by Stewart, C.)

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by the First National Bank of Lawton against Florence E. Humphreys and Frank E. Humphreys. Judgment for defendants, and plaintiff brings error. Re-

versed and remanded with instructions to render judgment for plaintiff.

Johnson & Stevens and W. L. Moore, for plaintiff in error.

H. G. McKeever and A. L. Zinser, for defendants in error.

Opinion by STEWART, C. The plaintiff, the First National Bank of Lawton, brought action against the defendants on a promissory note in the sum of $6,000 principal, also for interest and attorney's fees, and for foreclosure of mortgage on lands of the defendant Florence E. Humphreys. The defendants answered by admitting the execution of the note and mortgage, but denying liability, alleging failure of consideration and damages because of partial failure of the plaintiff to comply with the terms of a contract made by the plaintiff as an inducement to the execution of such note and mortgage and as consideration therefor. The plaintiff filed motion for judgment on the pleadings, which was overruled by the court, after which plaintiff filed its general denial of the allegations contained in such answer; the case, being called for trial, and the defendants having admitted the execution of the note and mortgage, assumed the burden of proof as to the matters set out in their answer; the plaintiff objected to the introduction of testimony, on the ground that the answer did not state a defense, which was overruled. After the introduction of testimony on the part of the plaintiff and the defendants, the plaintiff moved the court to direct a verdict for the plaintiff, which motion was overruled, and the jury, after receiving the court's instructions, returned a verdict for the defendants; motion for a new trial being duly filed and overruled, the court rendered judgment in accordance with the verdict. The plaintiff duly preserved exceptions to the adverse rulings of the court.

It is argued with much plausibility by the plaintiff that, the execution of the note and mortgage being admitted the answer of the defendants was insufficient to state a defense and that the motion for judgment on the pleadings should have been sustained. The plaintiff contends that the alleged contract on the part of the plaintiff, if made at all, was executory in its nature, and that the agreement and not the performance thereof was the true consideration; that the remedy, if any, that defendants had was by action on the alleged breach. We are inclined to agree with the plaintiff that the answer does not state a defense in so far as the same purports to set up a failure of consideration.

The pleadings of defendants, however, allege that defendants have been damaged by the violation of said agreement by the plaintiff, and that because of the violation of such agreement the capital stock held by defendants in the Lawton Mill & Elevator Company, amounting to $15,000, has been rendered worthless. The damages are not definitely stated, and the court would have been authorized to sustain a motion to make more definite and certain. The answer was possibly subject to demurrer, but the plaintiff did not demur or file motion to make more definite and certain. This court does not favor testing the sufficiency of a pleading by objection to the introduction of evidence or by motion for judgment on the pleadings. When no demurrer has been filed, neither a motion for judgment on the pleadings, nor an objection to the introduction of testimony, will be sustained if, by any legal intendment, the pleading objected to states a cause of action or ground of defense, as the case may be. Such motion and objection will not avail merely because the allegations are incomplete, indefinite, or state conclusions of law. Marshall & Co. Bank v. Cochran, 17 Okla. 538, 87 Pac. 855; McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524, 138 Am. St. Rep. 803; First Bank of Texas v. Terrell, 44 Okla. 719, 145 Pac. 1140, Ann. Cas. 1917A, 681. We think that in so far as the answer may be construed to set up a counterclaim for damages, the court did not err in overruling the motion for judgment on the pleadings and the objection to the introduction of testimony.

The defendant alleges that the property mortgaged is the property of the defendant Florence E. Humphreys, and that an oral agreement was entered into with the plaintiff bank by and through its proper officers, whereby the defendants were to execute the note and mortgage sued on, together with another note and mortgage, both of the notes amounting to $10,000, and to deliver same to the plaintiff to pay the past indebtedness of the Lawton Mill & Elevator Company, a corporation, in which the defendants were stockholders; that, in consideration for the execution of the notes and mortgages and the reduction of the indebtedness of the Lawton Mill & Elevator Company, the plaintiff, through its proper and duly authorized officers, agreed that said officers as individuals would pay for and carry one half of the paid-up capital of the Lawton Mill & Elevator Company, to wit, $15,000, and that the defendants would carry the other half of said stock, and that the plaintiff bank would furnish the Lawton Mill &

Elevator Company a sufficient amount of money to conduct and carry on its business; that because of such agreement the defendant Florence E. Humphreys was induced to pay over her individual assets by executing the note and mortgage mentioned to pay the plaintiff, the First National Bank of Lawton, $10,000 past indebtedness of the Lawton Mill & Elevator Company; that the plaintiff bank had knowledge that it required large sums of money for carrying on and conducting the Lawton Mill & Elevator Company, and said bank agreed that in the event of the inability by reason of insufficient capital stock to furnish the required funds, the bank would procure the loan of sufficient funds to the Lawton Mill & Elevator Company from other sources. It is alleged further that the plaintiff bank carried out the terms of its agreement from January 14, 1911, the date of the execution of the notes and mortgage, to the year 1913, during which year the plaintiff neglected and refused to procure the required funds for carrying on such business, by reason of which the Lawton Mill & Elevator Company was forced to quit business; that its credit was ruined, and its capital stock rendered worthless.

The evidence is conflicting as to whether or not the bank made the oral contract as alleged; however, the jury, having found for the defendant, we are concluded as to such issue of fact. But the plaintiff contends that such a contract would be void for uncertainty, and also that the same would be ultra vires and void. If, as contended, the consideration of the contract on the part of the defendants was the agreement alleged to have been made by the bank, the plaintiff certainly could not take advantage of its own wrong and enforce a promise made in consideration of such void agreement. Without passing upon this contention of plaintiff, we will, however, consider the sufficiency of the evidence to sustain the judgment on the assumption that the alleged agreement on the part of the bank was valid, and that damages to the defendants because of a breach thereof by the bank would be recoverable and authorized by the pleadings of the defendants. It would then necessarily follow that if damages were equal to or greater than the claim of plaintiff, the jury would be justified in finding that the defendants were not liable on the note and mortgage.

The uncontradicted evidence shows that, in pursuance of negotiations between the defendants and officers of the bank, on January 14, 1911, what was called a "reorganization" of the Lawton Mill & Elevator Company took place; that prior to such time, the defendants were the owners of the entire capital stock of the Lawton Mill & Elevator Company; that on reorganization certain officers of the plaintiff bank as individuals subscribed and paid for $15,000 of capital stock; that the defendants were allowed $5,000 of the capital stock for what was termed their "equity" in the corporation; that in consideration of the two notes and mortgage executed by the defendants, $10,000 in cash, by the direction of the defendants, was placed on deposit to the credit of the Lawton Mill & Elevator Company; that the $15,000 for the capital stock subscribed by the directors of the bank was also deposited to the credit of such corporation; that the milling corporation issued $15,000 of its capital stock to such bank directors and $15,000 of the same to the defendants; that it had an authorized capital of $50,000, and that $20,000 of the authorized capital became treasury stock; that at the time of the reorganization, there was indebtedness due to the bank in the sum of $11,000; that in addition the defendants were individually liable to the bank on two promissory notes in the sum of $5,000, money used by the milling corporation; that the defendant Frank E. Humphreys was made vice president and general manager of the corporation as reorganized, and defendant Florence E. Humphreys was made secretary; that the business was managed and controlled by the defendants, all cash being received and paid out, money borrowed, and notes for borrowed money executed by them in their official capacity; that in the regular course of business, the amount due the bank at the time of the reorganization, including the $5,000 for which defendants were individually liable, was paid by checks signed either by Florence E. Humphreys or Frank E. Humphreys. It further appears that the bank began at once to furnish other money and make loans to the milling corporation, and in many instances, permitted large overdrafts; that large sums of money were furnished by the bank and procured through the influence of the bank's officers to be used by such corporation; that the capital and surplus of the bank was $110,000, and yet the bank carried for most of the time a loan of $11,000, the limit allowed under the law to be loaned to one individual or firm; that the officers of the bank owned the stock of the Lawton Realty & Investment Company and caused the Lawton Realty & Investment Company to loan large sums in addition to that furnished by the bank; that the bank also

caused the Oklahoma State Bank to loan the sum of $2,000, and the Drovers' National Bank of Kansas City the sum of $5,000; that at the time of the reorganization of the Lawton Mill & Elevator Company the real property and machinery of the corporation were mortgaged to N. A. Robertson to secure an original loan of $30,000, which was not paid when the other old indebtedness was liquidated; that the Lawton Mill & Elevator Company was engaged in the business of milling and buying and selling wheat and other grain during the grain season; that very little grain was grown in its trade territory during the years 1911, 1912, and 1913; that the statements of the Lawton Mill & Elevator Company showed a constant decrease in net assets; that in July, 1913, the directors of the bank who, at the reorganization purchased stock in the Lawton Mill & Elevator Company, became dissatisfied with the way the business was being conducted; that on July 10th, by mutual agreement, Florence E. Humphreys retired as secretary, and the stockholders selected A. R. McLennan to keep the books and act as secretary, but the defendant Frank E. Humphreys was retained as manager, his salary being increased; that after the retiring of Mrs. Humphreys, the bank continued to furnish money and to permit overdrafts for handling the grain crop for that season, also procuring money from others for the milling corporation.

The record shows that all along the bank's officers were somewhat insistent that overdrafts be cared for and curtailed; that on certain occasions the bank refused to pay overdrafts and same were protested; that the business was conducted until December, 1913; that considerable of the grain was sold and applied on indebtedness; that, however, when the business was closed there was an indebtedness which has never been paid for money furnished and procured by the bank in the following sums: Notes to the bank aggregating $11,000, Lawton Realty & Inv. Co. $7,400, Oklahoma State Bank $1,000. There also remained due on the notes made to N. A. Robertson about $25,000. The minutes of the board of directors of the corporation show that on November 15, 1913, a motion was unanimously adopted that all personal property belonging to the Lawton Mill & Elevator Company should be disposed of as soon as possible to the best advantage; that the price of wheat in large quantities should be passed upon by the board of directors, and that in case a difference of opinion should arise over the price of any product it should be referred to the board of directors whose action should be final. This mo-

tion was voted for by each of the defendants as directors of the corporation. The corporation soon after ceased to do business, and the property mortgaged to secure the N. A. Robertson note was sold under foreclosure proceedings.

One of the allegations of the defendants is that the notes and mortgage were made for the purpose of paying the debts of the corporation; the proof shows that the bank furnished $10,000 to the defendants in consideration of said notes and mortgages which was used by defendants in purchasing capital stock of the corporation, and that the money obtained by the reorganization was not only disbursed to pay the debts of the corporation, but that $5,000 of the same was used to pay the individual obligation of the defendants.

We see no evidence of bad faith on the part of the plaintiff bank. We have nothing before us but the record in this case, and from the record as we view it the bank has done everything that could reasonably be expected to make a success of the Lawton Mill & Elevator Company; whether the failure was due to mismanagement of the defendants or the failure of the crops is not material. The bank is not responsible for the failure of crops, and could only be expected under the contract to furnish and procure such money as was reasonably consistent with good business principles, and it was the duty of the officers of the bank to exercise the same prudence and caution in making loans to the Lawton Mill & Elevator Company as was used in making loans to others of its customers. The law of the country is an implied part of every contract, and it cannot be expected that the bank itself would make a loan in excess of one-tenth of its capital stock. It appears from the evidence that during practically all of the time after its reorganization the Lawton Mill & Elevator Company was indebted to the bank on notes in the full sum allowed by law. In addition the bank from time to time had permitted heavy overdrafts. Under the law the officer of a bank paying overdrafts is individually liable to the bank for the same. The defendants are therefore not in a position to complain because the bank refused the payment of certain overdrafts made, nor could it be expected that the bank would recommend to others that loans be made which, under the law, the bank itself was not authorized to make, and it is clear that the bank could not be expected to recommend to others the extending of loans to a failing institution or loans, the repayment of which was doubtful and

precarious. The officers of the bank with respect to handling of its funds were acting in a fiduciary capacity, and they not only could not make loans to an individual in excess of the statutory limit, but the law made it their duty to make no improvident loans or advancements of money, and not to do any act with reference to the funds under their control which might have imperiled the safety of such funds or tended to wreck the institution which they were conducting. There is no evidence of bad faith on the part of the bank or its officers. The defendants were placed in absolute control of the business and funds of the reorganized corporation. It appears that, in addition to the $25,000 which was furnished by the bank and its officers at the time of the reorganization of the Lawton Mill & Elevator Company, the bank and other institutions in which its stockholders were interested sustained losses for money loaned in the sum of $19,400; there being no prospect for such losses to be repaid. The only hope of return of any of the money furnished lies in the enforcement of the terms of the notes and mortgages signed by defendants. It will be remembered that $5,000 of the money received for such notes and mortgage was used to pay the individual obligations of the defendants. For an institution so heavily involved and whose real property and machinery were mortgaged to the extent named, the bank extended and procured more credit than was consistent with sound business principles and much more than could have been reasonably expected under the contract, if, as a matter of fact, such contract existed. The fact that the defendants in this case on November 5, 1913, just prior to closing out the business, agreed with the directors of the Lawton Mill & Elevator Company, and voted to sell all the personal property of the corporation refutes the suspicion that the bank and its officers coerced the corporation to discontinue it's business.

If there were any evidence reasonably tending to show that the bank's acts had damaged the defendants, we would feel inclined to sustain the judgment of the court. No doubt the defendants have struggled long and hard to maintain the institution to which their fortunes were wedded, but all of the parties to this controversy are used to business and accustomed to compel the performance of legal obligations incurred by others, and know that it is important that the courts enforce legal obligations and protect legitimate business.

We are mindful of the unbroken rule of this court in actions at law not to determine on appeal issues of fact, but we are reminded also that, when the record shows, as it does in this case, that the sufficiency of the evidence was properly challenged in the trial court, the judgment will be set aside unless there be some evidence which reasonably supports the same. We do not think that a careful and unimpassioned view of all the testimony in this case would lead to the reasonable conclusion that there has been an actionable breach of duty on the part of the plaintiff. The motion of plaintiff for a directed verdict should have been sustained.

This cause is reversed and remanded, with instructions to render judgment for the plaintiff in accordance with the views herein expressed.

By the Court: It is so ordered.