**PANHANDLE COOPERATIVE ROYALTY COMPANY, a corporation, Flag Oil Corporation of Delaware, a corporation, and Farmers Union Cooperative Royalty Company, a corporation, Plaintiffs in Error,**

v.

**Mary CUNNINGHAM, Executrix of the Estate of Anna Jarboe, Deceased, Eagle-Pitcher Company, a corporation, and Dede K. Prewitt, Defendants in Error.**

No. 42696.

Supreme Court of Oklahoma.

May 11, 1971.

Rehearing Denied April 4, 1972.

McBee & Benson, Howard McBee, Lloyd L. Benson, Frederick, for plaintiffs in error, Panhandle Cooperative Royalty Co. and Flag Oil Corporation of Delaware.

Tomerlin & High, Granville Tomerlin, V. E. Stinchcomb, Oklahoma City, for plaintiff in error, Farmers Union Cooperative Royalty Co.

Waldo T. Oden, Tal Oden, Larry Derryberry, Atty. Gen., Altus, for defendant in error, Mary Cunningham, Executrix of Estate of Anna Jarboe, deceased.

Richard W. Fowler, Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Oklahoma City, for defendant in error, Dede K. Prewitt.

McINERNEY, Justice.

This is an appeal from a judgment of the District Court of Jackson County, Oklahoma, quieting title in Mary Cunningham, Executrix of the Estate of Anna Jarboe, deceased (Plaintiff), and in Dede K. Prewitt, a defendant, against the claims to certain alleged mineral interests made by Farmers Union Cooperative Royalty Company (Farmers), Flag Oil Corporation of

Delaware, successor to Flag Oil Company (Flag), and Panhandle Cooperative Royalty Company (Panhandle). The judgment rendered by the District Court was a judgment on the pleadings in which the parties are identified as they are identified above. The trial court retained jurisdiction of the controversy between Plaintiff and Dede K. Prewitt. Farmers, Flag and Panhandle appealed.

The conduct which it is alleged casts the clouds upon Plaintiff's and upon Prewitt's title was the conduct of Farmers, Flag and Panhandle as lessors in executing leases to Eagle-Pitcher Company, a corporation, (Eagle) as lessee, granting the right to Eagle in the lands described below, to prospect for, produce and market copper, metal and ore bearing materials, and the conduct of Eagle in mining copper and silver ores as lessee in the leases executed by all parties to the controversy. Accordingly, the rights of Eagle are not in question in this appeal but due to the conflicting claims of the various lessors to royalties under the leases to Eagle, the royalty payments are being made by Eagle to a court appointed receiver.

The Jackson County lands involved are:

Tract 1: Lots 3 and 4 (The North Half of the Northwest Quarter) Section 4, Twp. 1 South, Range 22 W.I.M.;

Tract 2: The Southwest Quarter, Section 3, Twp. 1 South, Range 22 W.I.M.

The written instruments differ substantially in content. Plaintiff and Prewitt claim that the Farmers-Flag deed covering Tract No. 1, executed July 30, 1930, set forth in relevant parts below, did not grant and convey to the grantee and its successors in interest any substance or the right to explore for, discover, produce and own any substance other than oil and gas and other hydrocarbon type minerals. Farmers and Flag claim that their deed granted, in addition, the copper, silver, gold or any other types of metallic mineral ores or metallic minerals lying in, upon or under the land covered by the conveyance. The judgment of the court below validated the claim of Plaintiff and Prewitt under the Farmers-Flag deed.

The granting clause of the Farmers-Flag deed, which bears the label MINERAL DEED Special, is:

"* * * have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said Grantees an undivided one-half interest in the proportion of three-fourths (¾) and one-fourth (¼) interest therein respectively to the said Grantees in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described lands * * * together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom."

Other relevant provisions are:

"Said land being now under an oil and gas lease, executed in favor of not leased it is understood and agreed that this sale is made subject to the terms of said lease, and covers and includes √ of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease insofar as it covers the lands above described.

"It is understood and agreed that one-half of the money, or other bonus, which is paid for any future oil and gas lease or leases, which may be placed upon the above described land and one-half of the money rentals which may be paid to extend the terms within which a well may be commenced under the terms of said lease or leases shall be paid to and be the property of the Grantees."

▮ We are mindful of the rule announced in Hill v. Anderson et al., Okl., 363 P.2d 849 (1961) that motions for a judgment on the pleadings "are not favored by the courts, and pleadings asserted to state no cause of action or defense are to be construed liberally in favor of the pleader. * * * If such pleading may be construed

to state a cause of action, a motion for a judgment on the pleadings cannot be sustained merely because some allegations appear indefinite or express pure legal conclusions. First National Bank of Lawton v. Humphreys, 66 Okl. 186, 168 P. 410." Farmers and Flag each alleged that the granting clause in their deed " * * * is to some extent ambiguous as to the exact type and character of the various types of 'other minerals' intended to be conveyed thereby. In this connection, defendant further alleges that it was the intention of the parties at the time of said conveyance that grantor convey by virtue of said mineral deed to the grantees specified, without any restriction whatsoever, specified fractional interest in all grantor's right, title and interest in any and all minerals of any type and character whatsoever including any and all types of metallic minerals or ores which might be then present and thereafter discovered upon the property and premises described." Whether a contract is ambiguous so as to require extrinsic evidence to clarify the ambiguity is purely one of law for the court. Harjo Gravel Co. v. Luke-Dick Co., 194 Okl. 537, 153 P.2d 112 (1944).

We do not agree that the granting clause in the Farmers-Flag deed, considered in context, is, as alleged by Farmers and Flag, ambiguous. There are provisions in the Farmers-Flag deed that, considered in connection with the granting clause, limit the scope of the grant. We refer to the provisions saying that if "said land" is under an oil and gas lease that the grant is made subject to the terms of said lease but covers and includes a proper share in oil royalty and gas rentals or royalty. Another provision declares how the grantee shall share in the benefits accruing from the execution of any future oil and gas lease or leases. It is thus certain that the parties were preoccupied with oil and gas, that oil and gas was dominating the attention and the intention of the parties to the conveyance. The label on the Farmers-Flag deed indicating the deed is a special form suggests the limited scope of the grant.

In taking the whole contract together so as to give effect to every part, 15 O.S.1961, § 157, there is one other recital in the granting clause that must be harmonized with the grant of oil and gas and with the provisions that refer to the monetary accruals from oil and gas leases. We refer to the expression "and other minerals" in the grant of "oil, gas and other minerals." The query is: if only oil and gas were to be granted why the expression "and other minerals?" May there be "other minerals" than those referred to as oil or gas, in one or more senses, 15 O.S.1961, § 160, produced as oil or gas, or as a component thereof from the same well bore through the same string of casing or through the annular space between two strings of casing? The answer is "Yes" and lies partly in the history of litigation over these terms. The Supreme Court has interpreted both clauses and provisions which sometimes did and sometimes did not contain the expression "and other minerals" in cases arising several years before the execution of the Farmers-Flag deed in 1930.

In Withington v. Gypsy Oil Co., 68 Okl. 138, 172 P. 634 (1918) the trial court sustained a general demurrer to plaintiff's petition. Plaintiff alleged that considering the royalty provisions in the oil and gas lease together, the provision that applied to "gas from any well producing gas" covered casinghead gas from an oil well. Had the expression "and other minerals" been inserted after the word "gas" so as to read "gas *and other minerals* from any well producing gas" there would have been no basis for a controversy between the lessee, Gypsy, and the lessor, Withington.

In Wolf et ux. v. Blackwell Oil & Gas Co. et al., 77 Okl. 81, 186 P. 484 (1920), the grant in the lease was "oil, gas and other minerals." One royalty provision required payment "to lessor of one tenth of all oil or other minerals." The dispute arose over whether this provision applied to gas well gas from which natural gasoline was processed. The court held that the provision did not so apply perforce "ejusdem generis." No basis for a dispute would

have existed had there been one royalty provision applying to "oil, gas, and other minerals."

In Hammett Oil Company v. Gypsy Oil Company, 95 Okl. 235, 218 P. 501 (1921), one question was whether a lease covering "oil and gas" thereby covered casinghead gas when the only provisions for royalty were ⅛ of oil and $250.00 for gas wells. This Court held that casinghead gas was not covered by the lease. The expression "and other minerals" in the granting clause would have required an opposite result insofar as the court's construction of the original oil and gas lease.

In Mullendore et al. v. Minnehoma Oil Company et al., 114 Okl. 251, 246 P. 837 (1926), the issue was whether a lease granting the premises for the sole and only purpose of mining oil and gas, granted the right to produce casinghead gas from an oil well. The court held it did not grant such right. The addition of "and other minerals" in the granting clause and the addition of a royalty provision for casinghead gas would have required an opposite result.

George et al. v. Curtain, 108 Okl. 281, 236 P. 876 (1926) involved the same issue as that involved in Mullendore, supra.

■ It is indeed apparent from a consideration of the cases we have just cited that in contracts dealing with the production and utilization of oil and gas, the expression "and other minerals" has a special purpose in extending the connotation of "oil and gas" only.

■ We hold that the granting clause in the Farmers-Flag deed is not ambiguous when construed by taking the conveyance as a whole so as to give effect to every part, using each clause to help interpret the others. 15 O.S.1961, § 157. That § 157 as well as others in Chapter 3 of Title 15 apply in the interpretation of contracts like the conveyances here involved, is well settled. Cronkhite v. Falkenstein, Okl., 352 P.2d 396, 398 (1960).

The cases are legion that apply the requirements of 15 O.S.1961, § 157 to take the whole of a contract so as to give effect to every part using each clause to help interpret the others and that apply the related rule of interpretation, 15 O.S.1961, § 155, that the intention of the parties is to be ascertained from the writing alone, if possible. Wolf et ux. v. Blackwell Oil & Gas Co. et al., supra; Withington v. Gypsy Oil Co., supra; Hicks et al. v. Mid-Kansas Oil & Gas Company, 182 Okl. 61, 76 P.2d 269 (1938); Rose v. Cook, 207 Okl. 582, 250 P.2d 848 (1952).

■ We hold that the Farmers-Flag deed, so interpreted, grants the right to prospect for, discover, produce and own oil, gas and other minerals produced as oil or gas or produced as a component or constituent thereof, whether hydrocarbon or non-hydrocarbon, and does not grant any other mineral or the right to produce any other mineral including copper, silver, gold or any other types of metallic ores or metallic minerals.

■ The judgment of the trial court quieted title in Farmers and Flag in "oil, gas, and other hydrocarbon type minerals." We do not find the limitation of the scope of minerals in the deed so narrow. A limitation on the grant of minerals to hydrocarbons produced as oil or gas would not be implicit in the deed. We are judicially aware from scientific and other treatises that one or more substances emerge as a constituent or component of gas, produced from a gas well. Such substances necessarily come from the well head and into the transmission line with all gases that make up the entire stream. Separation at the well head is impossible. These minerals produced as oil or gas, or a component thereof, are not limited to hydrocarbons. Accordingly we modify the judgment in regard to Farmers and Flag to quiet title in these parties to the oil, gas, and other minerals produced as oil or gas or produced as a component or constituent thereof. We do not attempt to identify such minerals in this opinion; we do modify the limitation placed thereon in the judgment.

Concluding that the intention of the parties as revealed within the four corners of the Farmers-Flag deed is clear, we did not use "ejusdem generis" in our interpretation of this deed. The Plaintiff and Prewitt apparently contend that "ejusdem generis" is a rule of property or an absolute rule of law. Farmers and Flag urge that our decisions, involving the meaning of minerals vis-a-vis surface, may be sustained on other grounds than by the use of "ejusdem generis"; that our references thereto constitute dictum. "Ejusdem generis" is not a rule of property but a rule of construction useful in ascertaining the meaning of words of doubtful import. Merely because this rule of construction is used with other rules of construction to interpret words of doubtful meaning does not render the application of the rule dictum. This rule of construction is a useful part of our law. See Cronkhite v. Falkenstein, Okl., 352 P.2d 396.

We now consider the two Panhandle deeds, identical in form, each labeled Sale of Oil and Gas Royalty, one dated the 14th day of June, 1927 covering the south half of Tract 2; the other dated the 2nd day of July, 1927 covering the north half of Tract 2 and other lands not involved in this action. Plaintiff and Prewitt claim that neither Panhandle deed conveyed and granted to Panhandle and its successor in interest, Flag, any substance or the right to explore for, discover, produce and own any substance other than oil, gas, coal and other hydrocarbon type minerals.

Panhandle and Flag claim that the Panhandle deeds granted, in addition, the copper, silver, gold, or any other types of metallic mineral ores or metallic minerals lying in, upon or under the land covered by the conveyance. The judgment of the court below validated the claim of Plaintiff and Prewitt under the Panhandle deeds. The granting clause in each Panhandle deed is:

" * * * have granted, bargained, sold, conveyed and set over, and do by these presents grant, bargain, sell, convey and set over unto Panhandle Co-Operative Royalty Company, its heirs, successors and assign all the following property, estate, right, title and interest therein, to-wit:

"An undivided one-half interest in all of the oil, gas, coal and other minerals now, or at any time hereafter, lying in or under the following described tract of land (or any part thereof,) situated. * * Also an undivided one-half interest in all my right, title and estate under and by virtue of any oil and gas mining lease, or other mineral lease, now or hereafter existing upon said premises, or any part thereof, including all rents and royalties accrued; and also the perpetual and irrevocable right, privilege and easement of entering upon said lands and searching for, drilling wells, sinking shafts, mining, digging, extracting, taking and carrying away all of the oil, gas, coal and other minerals in or under said lands, or that may be found therein or thereunder; and also the right to possession and use of so much of said premises at all times as may be necessary to the practical carrying out of the purposes and provisions of this grant."

The other relevant provisions are:

"It is hereby expressly declared that whereas the land, particularly described in this conveyance is understood to be subject to an oil and gas mining lease in favor of Assigns of Record it is intended that said outstanding lease is fully embraced in the general terms of this conveyance, so as to pass to, and vest in said Panhandle Co-Operative Royalty Company, a one-half interest, not only in the oil and gas, but also all rents and royalties therein reserved to the lessor, precisely as if said Panhandle Co-Operative Royalty Company had been, at the date of making of said lease, the owner in fee of a one-half interest in and to the lands described, and himself one of the lessors therein.

"And it is hereby further expressly declared that is the true intent and purpose of this conveyance to pass to and vest in the said Panhandle Co-Operative Royalty Company an undivided one-half interest in all the mineral and mineral rights in the land first described herein, or that at any time may be found therein or thereunder, and all grantor's rights to operate for said minerals, and deal and contract with regard thereto, including the leasing thereof, as fully to all intent and purpose as if the said Panhandle Co-Operative Royalty Company was the absolute owner of the entire title and estate in said lands."

Panhandle and Flag each alleged that the Panhandle deeds are "ambiguous as to the exact type and character of the minerals to be conveyed thereby, and this defendant further alleges that the intention of the parties at the time of such conveyance was that grantor convey to the grantee[s] one-half interest in all of grantor's right, title and interest in any and all minerals of any type and character whatsoever, including any and all types of metallic minerals or ores which might have been then present and thereafter discovered in said lands."

■ We agree that the Panhandle deeds are ambiguous and that parol evidence is permissible to clarify the ambiguity. Briggs v. Waggoner, Okl., 375 P.2d 896 (1962). In the light of the rule announced in Hill v. Anderson et al., Okl., 363 P.2d 849 (1961) the pleadings are adequate to require the trial court to hear and consider evidence that bears on the intention of the parties concerning the scope of the grant. While in the Panhandle deeds, the grant is to oil, gas, coal and other minerals, the parties' primary concern appears to remain with oil and gas (the grantees named their conveyances "SALE OF OIL AND GAS ROYALTY"). The grant in the Panhandle deeds of the irrevocable right to enter upon the lands to search for, drill, sink shafts, mine, dig, extract, take and carry away are as consonant with the conveyance of the specifically described minerals as with the sought-after metallic ores. Considering the face of the grant, the scope of the extension beyond oil, gas, and coal, if any, and particularly that clause purporting to describe the intention to pass "one-half interest in all the mineral and mineral rights," is not clear.

■ The label "SALE OF OIL AND GAS ROYALTY," considered in the relation to other provisions in the Panhandle deeds, enhances the doubt. In the light of claims made presently we may only speculate concerning the motivation that prompted the choice of such a label. Panhandle and Flag contend that the label is no evidence of intention and cite Colonial Royalties Co. et al. v. Keener et al., Okl., 266 P.2d 467, on page 470 (1954), wherein we said that the label "has no bearing upon the intention of the parties expressed in the instrument. * * * The terms of an instrument and not its name determines its character." On this matter we stand on our most recent expression in Crews et ux. v. Burke et al., Okl., 309 P.2d 291, on page 294 (1957) wherein we said, that "The fact that the instrument evidencing plaintiff's conveyance to the Burkes was denominated sale of 'Royalty' rather than a mineral deed is not of *controlling* importance." (Emphasis supplied.) Accordingly there may be circumstances which give the name of an instrument some importance. We do not exclude any fact which may properly bear upon determining the intention of the parties. We agree that the label of an instrument cannot control over the express terms of the deed. We do not agree that the form of the instrument, including the label, which was prepared by the grantee, may not be considered in its entirety to resolve the present ambiguity.

■ As to strip or open pit mining of copper and silver ores, nothing appears in the pleadings. However, during oral argument there seemed to be a tacit concession by all parties that the present operations by Eagle is strip or open pit mining. Neither is there anything in the pleadings about the extent of the destruction of the soil or

of the use of the surface occasioned by open pit or strip mining. The answer to an inquiry during oral argument left the extent of the destruction of the soil in doubt. In any event, the intention of the parties must be determined by resort to the events surrounding the execution of the deeds in 1927, rather than the actions of Eagle pursuant to its leases in 1963 and 1965.

This brings us to a consideration of Acker v. Guinn, Texas, 464 S.W.2d 348 (1971) decided by the Supreme Court of Texas February 10, 1971. Counsel for defendant Prewitt and counsel for Farmers and Panhandle each insist we should give serious consideration to this case. Counsel for Farmers and Panhandle filed a memorandum brief in specific response to Acker v. Guinn, assailing both the reasoning and the result of the case. The description of the conveyance in the Texas Supreme Court's opinion fits a description of the Farmers-Flag deed. It was held in Acker v. Guinn that notwithstanding the presence of iron ore, recoverable by strip mining, which had been known and recovered in Cherokee County, Texas, since the Civil War, a grant of oil, gas and other minerals did not grant iron ore whose recovery could not be accomplished without a destruction of the surface, especially since there is nothing in the deed even remotely suggesting an intention of vesting in the grantee the right to destroy the surface. Moreover, as stressed by counesl for Farmers and Panhandle the jurisprudential base of the opinion is the view that, "The intention sought should be the general intent rather than any supposed but unexpressed specific intent and further that general intent should be arrived at, not by defining and redefining the terms used but by considering the purposes of the grant or reservation in terms of the manner of enjoyment intended in the ensuing interest." The Texas Supreme Court cited Kuntz, The Law Relating to Oil and Gas in Wyoming, 3 Wyo.L.J. 107, 112. A more extended discussion of the same subject appears in Kuntz, Law of Oil & Gas, § 13.3, pp. 305, 306.

Although the Texas Supreme Court followed the view that a grant or reservation of "minerals" is a grant or reservation to extract from the earth all substances valuable in themselves, the related view that a destruction of the surface by a recovery of the minerals should result in the payment of damages to the surface owner in an amount that represented the value of the destroyed surface, was not followed.

We express no opinion at this time on the conclusion reached in *Acker*. The Texas Supreme Court had the benefit of a record, and their opinion was based, in large part, on the evidence disclosed by the record. Since the trial court's judgment must be reversed as to the Panhandle deeds, the argument presented here in the abstract may be presented to the District Court in relation to the evidence. A determination of the merits of the view of the Texas Supreme Court as expressed in Acker v. Guinn, supra, when applied to the recovery of substances that destroy the value of the surface, may then be made on the basis of evidence.

For the reasons stated, we modify the judgment of the trial court as applied to the Farmers-Flag deed covering Tract No. 1 so that this deed granted only the right to prospect for, discover, produce and own, oil, gas and other minerals produced as oil or gas or produced as a component or constituent thereof, whether hydrocarbon or non-hydrocarbon. As so modified we affirm the judgment of the trial court as to the Farmers-Flag deed.

As to the Panhandle deeds, one covering the north half, the other covering the south half of Tract No. 2, we reverse the judgment of the trial court and remand the case for further proceedings.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN, HODGES and LAVENDER, JJ., concur.