Bennie **WEST** and Odessa West, husband and wife, Appellees,

v.

**AETNA LIFE INSURANCE COMPANY,** a corporation, et al., Appellants.

No. 46401.

Court of Appeals of Oklahoma, Division No. 1.

Dec. 3, 1974.

Rehearing Denied Jan. 28, 1975.

Certiorari Denied June 10, 1975.

Released for Publication by Order of Court of Appeals June 12, 1975.

Harbison & Weber by Robert B. Harbison, Altus, for appellees.

Hal Grider, Altus, for appellants.

BOX, Presiding Judge:

An appeal by F. Blair Thorp, et al., defendants in the trial court, from the sustaining of a demurrer to the evidence of defendants, and granting judgment to Bennie West and Odessa West, husband and wife, plaintiffs in the trial court.

Supreme Court Cause, No. 46,401 and Supreme Court Cause No. 46,402, decided this same date by this court, were consolidated for trial purposes by the trial court. The Supreme Court denied consolidation for the purposes of appeal, but allowed the parties to adopt the brief in one cause as the brief in both causes.

The parties to the two appeals will be referred to as they appeared in the court below; that is, Bennie West and Odessa West, as appellees in Cause No. 46,401, and C. W. West and Irene West, as appellees in Cause No. 46,402, as plaintiffs; Aetna Life Insurance Company, defendant in Cause No. 46,401 in the court below, as Aetna; F. Blair Thorp, P. H. Phillips, I. D. Roberts, Sam E. Lynn, Susie Phillips and Vickie Phillips, · defendants in Cause No. 46,401 in the court below, as defendants Thorp, et al., and Eagle-Picher Company, defendant in Cause No. 46,401 in the court below as Eagle-Picher. The defendant in Cause No. 46,402 in the court below, F. Jack Witherspoon, and appellant here, will be referred to as Witherspoon; the defendant and appellant, E. L. Whitten, as Whitten; Eagle-Picher Company as Eagle-Picher, and all remaining defendants in the court below and appellants in Cause No. 46,402 as defendants, Witherspoon, et al.

The pleadings and record of the proceedings in the two causes in the court below disclose that the plaintiffs in each case, by their respective petitions, alleged that they were the owners

" . . . [O]f all copper, gold, silver, lead or other types of metallic ores or metallic minerals lying under or that may be produced from . . . ." (the lands as owned by each plaintiff) " . . . subject only to certain conveyances and reservations of undivided interests in and to oil, gas and other minerals in and under and that may be produced from varying portions of said described lands, as held and owned by the Defendants as above named . . . ."

The record discloses that the named defendants claimed under two different types of instruments, that is: reservations as contained in deeds of conveyance, as executed by the defendants, Aetna, Witherspoon and Whitten, and grants as contained in mineral deeds in which the remaining defendants were named as grantees. They were as follows:

RESERVATIONS:

1. Aetna claimed under a reservation as set forth in a deed as executed by Aetna reading as follows:

"There is excepted from this conveyance and reserved to the grantor an undivided one-quarter interest in and to all oil, gas and/or other minerals in and under the land herein conveyed . . . ."

2. Witherspoon claimed under a reservation as set forth in a deed as executed by Witherspoon reading as follows:

"RESERVING, HOWEVER, unto the undersigned F. Jack Witherspoon, an exact undivided 5/8ths interest in and to all oil, gas and other minerals lying under or that may be produced from the premises above described . . . ."

3. Whitten claimed under a reservation as set forth in a deed as executed by Whitten reading as follows:

"E. L. Whitten hereby reserves an undivided one-half interest in and to the above described land for all oil, gas and mineral rights . . . ."

GRANTS:

The defendants Thorp, et al., in both causes, claimed under grants as contained in a standard form of "Mineral Deed," entitled "Manly Form 249 AF, Mid-Continent

Royalty Owners Association, Approved Form, Revised," the granting clause of which form of mineral deed provided as follows:

" . . . [D]o hereby grant, bargain, sell, convey, transfer, assign and deliver unto ———— hereinafter called grantee (whether one or more) an undivided ———————— interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands, situated in Jackson County, Oklahoma, to-wit:

(description of lands)

together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas and other minerals, and storing, handling, transporting and marketing the same therefrom with the right to remove from said lands all of grantee's property and improvements."

Plaintiffs in each of the causes by their respective petitions as filed in the court below alleged that such reservations and grants were insufficient to vest in said defendants any right or title in or to " . . . copper, gold, silver, lead or other types of metallic ores or metallic minerals, lying under or that may be produced from said described land . . . ."; that said plaintiffs were the sole owners of such metallic ores or metallic minerals, and prayed the judgment of the court quieting their title thereto as against said defendants and each of them.

By their answer, the defendants F. Jack Witherspoon and Thorp, et al., alleged that at the time, said reservations and grants were made and taken, it was the intention of all parties to said instruments that there be reserved or granted to said defendants " . . . undivided mineral interests in and to all of the minerals, with no exceptions . . . ."; and that " . . . the wording in said Mineral Deeds is ambiguous . . . ."

The defendant Whitten, by his separate answer alleged that the reservation clause, to-wit:

" . . . E. L. Whitten hereby reserves an undivided one-half interest in and to the above described land for all oil, gas and mineral rights . . . . "

is ambiguous and that it was the intention of the parties to reserve unto the defendant an undivided one-half interest in and to all of the minerals, with no exceptions, lying under or that might be produced from the lands hereinbefore described.

By their separate replies to the answers of said defendants in each of said causes in the court below, the plaintiffs denied the allegations

" . . . [O]f the answer of said Defendants that the instruments of conveyance as referred to in the answers of said Defendants . . . . were, or are, ambiguous either in law or in fact, it being by these Plaintiffs expressly denied that said instruments of conveyance (or of reservation) reserved or conveyed to, or caused to be vested in said Defendants, or any of them, any right, title, interest or estate in or to the copper, silver, gold or any other types of metallic ores or metallic minerals lying under or that might be produced from the lands constituting the subject matter of this action."

At the trial of each and both causes, upon the objection of the plaintiffs to the receipt of parol evidence as proffered by the various defendants touching upon the intention of the parties thereto at the time of execution of said various grants of conveyance and reservations, the trial court ruled that the stated reservations and grants were unambiguous in law and in fact; declined to receive parol evidence offered by the defendants, and quieted the title of the plaintiffs in and to the metallic ores and metallic metals lying under or that might be produced from the lands in

question, as prayed for by said plaintiffs, as follows:

"(a) That title in fee simple in and to all copper, gold, silver, lead or other types of metallic ores or metallic metals lying under or that may be produced from the land constituting the subject matter of this action and described as follows:

"The North Half of the Northwest Quarter of Section 17, Township 1 South of Range 22 West of the I.M., be quieted and confirmed in the plaintiffs herein, BENNIE WEST and ODESSA WEST, husband and wife, as joint tenants with rights of survivorship, as against any claim of right, title, interest, equity or estate of the defendants herein, or any of them, therein or thereto, subject only to the leasehold interest therein of the defendant, EAGLE–PICHER COMPANY, as shown of record."

The record further reveals that in the case of Bennie West and Odessa West, being Cause No. 46,401, defendant Aetna Life Insurance Company agreed to a judgment being entered " . . . [W]hich would restrict Aetna's reserved mineral interest to 'an undivided one-quarter interest in and to all oil, gas and other minerals produced as oil or gas or produced as a component or constituent thereof whether hydrocarbon or non-hydrocarbon.' "

From such order and judgment of the trial court, defendants have appealed.

Defendants argue as follows:

## "PROPOSITION I.

"A conveyance by warranty deed of the fee simple title with a reservation clause reserving unto grantor 'an undivided one half interest in and to the above described land for all oil gas and mineral rights' is ambiguous. When the grantors plead that such a reservation clause is ambiguous and the intention of the parties was to reserve an undivided one half interest in and to all of the minerals, with no exceptions, extrinsic or parole (sic) evidence may be introduced to explain the intention of the parties to an ambiguous deed.

## "PROPOSITION II.

"A conveyance labeled 'mineral deed' granting 'oil, gas and other minerals', which provides for the 'right of ingress and egress for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas and other minerals' is ambiguous. When the grantees plead that such a deed is ambiguous and the intention of the parties was to convey an undivided interest in and to all of the minerals, with no exceptions, extrinsic or parole (sic) evidence may be introduced to explain the intention of the parties to an ambiguous deed.

## "PROPOSITION III.

"The deeds of conveyance and reservation herein considered must be construed so as to give effect to the intention of the parties thereto."

The issue in simple terms is: Is a reservation or grant of "oil, gas and other minerals" ambiguous and subject to parol testimony as to its meaning, and does such a grant or reservation convey any interest in copper, silver, gold, or any other types of metallic ores or metallic minerals?

Defendants in the cases before this Court take exception to the interpretation placed by plaintiffs and the trial court on the case of Panhandle Cooperative Royalty Co. v. Cunningham, Okl., 495 P.2d 108, which will be commented on later in this opinion. Further, they argue that the use of the word "mining" in granting clauses renders the same ambiguous, contending that one does not mine for oil and gas; that the use of such term connotes excavating, strip mining, etc. as generally followed in the removal of metallic ore and minerals. Defendants present arguments and legal authorities from other states as well as definitions supplied and comments from Professor Eugene O. Kuntz found in

41 Oil & Gas Reporter, Report No. 3 (10–72) 3–75 through 3–79. With defendants' arguments we cannot agree, as will be hereinafter set out.

■ As to the defendants Witherspoon and Whitten, one claims under a reservation of " . . . all oil, gas and other minerals" and the other claims under a reservation of " . . . an undivided one-half interest in and to the above described lands for all oil, gas and mineral rights." The courts of Oklahoma, both state and federal, over a course of more than half a century, by way of adoption of the rule of ejusdem generis, as generally stated in 28 C.J.S. Ejusdem p. 1049, have ruled that:

" . . . Where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind . . . ."

A review of the rulings of the Oklahoma Supreme Court thereon constitutes a record of unanimity of ruling and decree, beginning with the case of Kansas City Southern Railway Co. v. Reinnam, 63 Okl. 69, 162 P. 726 (1917), and continuing through the years to the recent case of Panhandle Cooperative Royalty Co. v. Cunningham, Okl., 495 P.2d 108 (1971). The Supreme Court in construing contracts, statutes, deeds of conveyance, and other legal documents, have consistently adhered to the policy of "stare decisis."

The Supreme Court through Justice Kane, without mentioning the rule in its Latin context, first gave recognition thereto and acceptance thereof, in the Reinnam case, supra, wherein it was held:

"[A statute] providing a lien in favor of one who shall furnish any 'materials, machinery, fixtures or other things toward the equipment, or to facilitate the operation of any railroad,' the words, 'other things,' have reference to things furnished similar to those denoted by the preceding words, and do not include the hire of work mules furnished . . . for use in railroad construction."

In the case of Haynes v. Board of Commissioners, 66 Colo. 397, 182 P. 896 (1919), the Court, apparently for the first time, gave recognition to the rule by its Latin name, and in Syllabus 3 held:

"By the rule of 'ejusdem generis,' where general words follow the enumeration of particular classes of business, the general words will be construed as applicable only to business of the same general character or class as those enumerated."

And at page 897, Chief Justice Owen, speaking for the Court, stated:

"General words do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms."

In the case of Wolf v. Blackwell Oil Co., 77 Okl. 81, 186 P. 484 (1920) the Supreme Court had occasion to apply the rule in construing an oil and gas lease, using in its granting clause " . . . all the oil, gas and other minerals" and in its royalty clause, " . . . all oil or other minerals." By Syllabus 3 of the opinion the Court held:

"By the rule of ejusdem generis where general words follow the enumeration of particular classes of minerals, the general words will be construed as applicable only to minerals of the same general character or class as those enumerated."

And in the body of the opinion, at page 485, the Court states:

" . . . The general term 'other minerals,' following the word 'oil,' must be construed to be minerals of like character."

Other early cases adopting and applying the rule of construction as above stated are: Walton v. Donnelly, 83 Okl. 233, 201 P. 367 (1921); City of Tulsa v. Clark, 119 Okl. 122, 249 P. 286 (1926).

In the case of Smith v. First National Bank of Chandler, 114 Okl. 293, 245 P. 653, the Court quoted and followed the rule

in its Latin maxim context and further ruled:

"Where a contract is in writing and its terms and conditions are clear and unambiguous, the intent of the parties must be determined from the writing as a whole, and extrinsic evidence is not admissible to vary, alter, change or modify it.

"The construction of a written contract, the terms and conditions of which are clear and unambiguous, is a question of law to be determined by the court."

Over the ensuing years, the Court continued in its recognition and acceptance of and adherence to the rule of construction of ejusdem generis in the construction generally of contracts, statutes, deeds and other legal documents, and in the case of Vogel v. Cobb, 193 Okl. 64, 141 P.2d 276 (1943) had occasion to apply the rule in construction of two mineral deeds. In the first the grantor made conveyance of an undivided one-half interest in and to the "oil, petroleum, gas, coal, asphalt and all other minerals of every kind and character . . .," and in the second, made conveyance of an undivided one-half interest in and to all the "oil, gas and other minerals in and under . . ." the lands in question. The grantee in the two deeds sought to take water from wells as drilled on the lands in question arguing " . . . that since water is a mineral, it was included in the term 'other minerals' used in the two conveyances." The Court stated as follows:

"While it may be conceded that water, in a technical sense, is a mineral, it does not follow that it will pass under ordinary mineral deeds such as those here involved. Under the rule of ejusdem generis, where a party or author, in a contract, conveyance, will, or statute, makes use 'first, of terms, each evidently confined and limited to a particular class of a known species of things and then, after such specific enumeration, subjoins a term of very extensive signification, this term, however general and comprehensive in its possible import, yet, when thus used, embraces only things 'ejusdem generis', i. e. of the same kind or species, with those comprehended by the preceding limited and confined terms. In a word, the last is restricted to the subject matter of the preceding terms.' (Quoting numerous state and federal cases and both Thornton and Summers on Oil and Gas.) And under this rule it is generally held that where a grant is of certain specified minerals and 'other minerals' the latter term includes only minerals of the same kind as those specified and does not include a substance which, although a mineral in the broad sense of the term, is not similar to those specifically mentioned."

In the later case of Cronkhite v. Falkenstein, Okl., 352 P.2d 396 (1960), the Court was again called upon to construe the term " . . . oil, gas and other minerals." In that case by a form of mineral deed, denominated Mid-Continent Royalty Owners Association Approved Form Revised, similar to the one in the instant case, the grantor made conveyance of an undivided one-half interest

" . . . [I]n and to all of the oil, gas and other minerals in and under that may be produced from (certain described lands) together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas, and other minerals . . . ."

The grantee in such deed sought to remove gypsum from said lands. Conceding gypsum to be a "mineral", the Court in Syllabus 3 of the opinion held:

"Under the rule of ejusdem generis, a mineral deed conveying an undivided one-half interest in and to all of the oil, gas and 'other minerals' in and under the land did not include gypsum rock."

And in concluding its opinion, the Court said:

" . . . We conclude that by the use of the words in the mineral deed, 'oil,

gas,' preceding other minerals, the latter term embraced only minerals of the same generic class as oil and gas, and did not include gypsum rock."

In the more recent case of Pandhandle Cooperative Royalty Co. v. Cunningham, Okl., 495 P.2d 108 (1971), the Court, while finding a resort to the rule of ejusdem generis unnecessary in the determination of a portion of said case, gave continuing and further approval of the rule as follows:

".   .   . This rule of construction is a useful part of our law.   .   .   ."

■ The remaining defendants in both causes in the court below (other than Aetna, Witherspoon and Whitten), as hereinbefore referred to as "Thorp, et al.," asserted rights to and an interest in ".   .   . all of the minerals, with no exceptions whatsoever" in and under the lands in question. Such claim of right and interest they based upon grants as received by each of them by a standard form of "Mineral Deed" generally and universally used in the trade or profession and denominated as "Manly Form 249 AF (Mid-Continent Royalty Owners Associated, Approved Form Revised)."

The Supreme Court has held in numerous instances that the granting clause in a deed determines the interest conveyed. Jennings v. Amerada Petroleum Co., 179 Okl. 561, 66 P.2d 1069. Thus the granting clause in the various mineral deeds under which the defendants, Thorp, et al., assert an interest and base their defense is of all controlling import. The granting clause of Manly Form 249 AF reads as follows:

".   .   . [D]o hereby grant, bargain, sell, convey, transfer, assign and deliver unto _____ hereinafter referred to as grantee (whether one or more) an undivided _____ interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Jackson County, Oklahoma, to-wit:

(description of lands)

together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas and other minerals, and storing, handling, transporting and marketing the same therefrom with the right to remove from said lands all of grantee's property and improvements."

In the Panhandle-Cunningham case, supra, the Supreme Court had occasion to construe a granting clause, for all legal intents and purposes, identical in phrasing and terminology to the Manly form now before this Court, wherein there was before the Court for consideration and interpretation the standard form of "Mineral Deed" as used by Farmers Union Cooperative Royalty Company in acquiring mineral interests in Oklahoma lands. The granting clause in the deed before the Court read as follows:

".   .   . [D]o grant, sell, convey, assign and deliver unto said grantee an undivided _____ interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described lands situated in Jackson County, State of Oklahoma, to-wit:

(description of lands)

together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom."

The Court, after a careful consideration of the case on appeal, and on petition for rehearing regarding the Farmers-Flag deed, ruled as follows:

"We hold that the Farmers-Flag deed, so interpreted, grants the right to prospect for, discover, produce and own oil, gas and other minerals produced as oil or gas or produced as a component or constitutent thereof, whether hydrocarbon or non-hydrocarbon, and does not

grant any other mineral or the right to produce any other mineral including copper, silver, gold or any other types of metallic ores or metallic minerals."

And in its opinion, the Court ruled:

" . . . [T]hat this deed granted only the right to prospect for, discover, produce and own, oil, gas and other minerals produced as oil or gas or produced as a component or constituent thereof, whether hydrocarbon or non-hydrocarbon. . . ."

Appellants point out to the Court that the Supreme Court in the Panhandle-Cunningham case, supra, had cause to remand part of same back to the trial court with instructions to hear parol evidence regarding two Panhandle deeds, wherein the Court beginning at 495 P.2d page 114 and on page 115 stated in part as follows:

"Panhandle and Flag claim that the Panhandle deeds granted, in addition, the copper, silver, gold, or any other types of metallic mineral ores or metallic minerals lying in, upon or under the land covered by the conveyance. The judgment of the court below validated the claim of Plaintiff and Prewitt under the Panhandle deeds. The granting clause in each Panhandle deed is:

" ' * * * have granted, bargained, sold, conveyed and set over, and do by these presents grant, bargain, sell, convey and set over unto Panhandle Co-Operative Royalty Company, its heirs, successors and assign all the following property, estate, right, title and interest therein, to-wit:

" 'An undivided *one-half* interest in all of the oil, gas, coal and other minerals now, or at any time hereafter, lying in or under the following described tract of land (or any part thereof,) situated. * * * Also an undivided *one-half* interest in all my right, title and estate under and by virtue of any oil and gas mining lease, or other mineral lease, now or hereafter existing upon said premises, or any part thereof, including all rents and royalties accrued; *and also the perpetual and irrevocable right, privilege and easement of entering upon said lands and searching for, drilling wells, sinking shafts, mining, digging, extracting, taking and carrying away all of the oil, gas, coal and other minerals in or under said lands, or that may be found therein or thereunder*; and also the right to possesises at all times as may be necessary to sion and use of so much of said premthe practical carrying out of the purposes and provisions of this grant.' (Emphasis supplied.)

"The other relevant provisions are:

" 'It is hereby expressly declared that whereas the land, particularly described in this conveyance is understood to be subject to an oil and gas mining lease in favor of *Assigns of Record* it is intended that said outstanding lease is fully embraced in the general terms of this conveyance, so as to pass to, and vest in said Panhandle Co-Operative Royalty Company, a *one-half* interest, not only in the oil and gas, but also all rents and royalties therein reserved to the lessor, precisely as if said Panhandle Co-Operative Royalty Company had been, at the date of making of said lease, the owner in fee of a *one-half* interest in and to the lands described, and himself one of the lessors therein.

" 'And it is hereby further expressly declared that is the true intent and purpose of this conveyance to pass to and vest in the said Panhandle Co-Operative Royalty Company an undivided *one-half* interest in all the mineral and mineral rights in the land first described herein, or that at any time may be found therein or thereunder, and all grantor's rights to operate for said minerals, and deal and contract with regard thereto, including the leasing thereof, as fully to all intent and purpose as if the said Panhandle Co-Operative Royalty Company was the ab-

solute owner of the entire title and estate in said lands.'

"Panhandle and Flag each alleged that the Panhandle deeds are 'ambiguous as to the exact type and character of the minerals to be conveyed thereby, and this defendant further alleges that the intention of the parties at the time of such conveyance was that grantor convey to the grantee[s] one-half interest in all of grantor's right, title and interest in any and all minerals of any type and character whatsoever, including any and all types of metallic minerals or ores which might have been then present and thereafter discovered in said lands.'

"We agree that the Panhandle deeds are ambiguous and that parol evidence is permissible to clarify the ambiguity. Briggs v. Waggoner, Okl., 375 P.2d 896 (1962). In the light of the rule announced in Hill v. Anderson et al., Okl., 363 P.2d 849 (1961) the pleadings are adequate to require the trial court to hear and consider evidence that bears on the intention of the parties concerning the scope of the grant. While in the Panhandle deeds, the grant is to oil, gas, coal and other minerals, the parties' primary concern appears to remain with oil and gas (the grantees named their conveyances *'Sale Of Oil And Gas Royalty'*). The grant in the Panhandle deeds of the irrevocable right to enter upon the lands to search for, *drill, sink shafts, mine, dig, extract, take and carry away are as consonant with the conveyance of the specifically described minerals as with the sought-after metallic ores. Considering the face of the grant, the scope of the extension beyond oil, gas, and coal, if any, and particularly that clause purporting to describe the intention to pass 'one-half interest in all the mineral and mineral rights,' is not clear."* (Emphasis supplied.)

As heretofore set out, the reservations contained in the contested reservations now before this Court do not extend said reservations and grants as did the Panhandle

deeds above referred to and as emphasized by this Court.

After a careful consideration of the records before this Court, we hold that the trial court did not commit error as contended by the respective defendants in Causes 46,401 and 46,402. Thus we affirm both judgments.

Affirmed.

ROMANG and REYNOLDS, JJ., concur.